465 A.2d 1293

Lester S. MILLER, Jr. and Juniata Foods, Inc., Appellants,

v.

MIFFLIN COUNTY INDUSTRIAL DEVELOPMENT AUTHOR-
ITY and Mifflin County Industrial Development Corporation,
FMC Corporation and Avtex Fibers, Inc.

Superior Court of Pennsylvania.

Argued March 8, 1983.

Filed Sept. 23, 1983.

G. Thomas Miller, Randolph M. Baker, Harrisburg, for appellants.

Allen Joseph Levin, Lewistown, for Mifflin County Indus. Development Authority, appellee.

Robert B. Brugler, Lewistown, for Mifflin County Indus. Development Corp., appellee.

Before CERCONE, President Judge, and WICKERSHAM and MONTEMURO, JJ.

MONTEMURO, Judge:

This case was initiated in the Court of Common Pleas of Mifflin County with the filing of a complaint in equity by the appellants, Lester S. Miller, Jr., and Juniata Foods, Inc., against the appellees, Mifflin County Industrial Development Authority (MCIDA) and Mifflin County Industrial

Development Corporation (MCIDC). The dispute between the parties arose from differences encountered in complying with the terms of an agreement for the sale of certain warehouse property. For the most part, appellants' (the buyers) allegations pertained to the appellees' (the sellers) failure to provide them with an adequate water supply to accommodate the warehouse sprinkler system and that appellees' agents had wilfully and wantonly removed a railroad spur line (Spur No. 1) located on that property without their consent. Appellants also asked the court to award compensatory punitive damages for the appellees' trespass.

First, the court below found that appellants did have an implied easement right to a sprinkler system under the sale agreement. On this basis, the court awarded appellants the increased amount of fire insurance premiums due as a result of the unworkable sprinkler system, ordered appellee, MCIDA, to provide adequate water and water pressure to serve appellants' warehouse sprinkler system for a reasonable cost; and further ordered appellee, MCIDA, to pay to appellants the cost of reactivating the sprinkler system. The court also ordered the appellants to execute an indemnification agreement to hold harmless appellee, MCIDA, from any claims by appellants, and their successors, which might arise as a result of negligent interruption of water service to the sprinkler system.

Second, the court found that appellants suffered no compensable loss for the removal of Spur No. 1:

With respect to the railroad spur issue, it is evident that the gravamen of Plaintiffs' prayer for relief concerns damages in the form of reimbursement for the cost of replacing Spur 1. Testimony of a railroad builder placed this cost in the neighborhood of $22,000.00. While Plaintiffs have argued and pressed this claim at times in easement terminology, the relief actually sought is replacement of Spur 1 or the monetary value thereof. We must find this relief untenable and will not grant same because of the uncontradicted evidence of record which clearly established that Spur 1, prior to removal, was virtually worthless and unsuitable for rail siding pur-

poses. Spur 1 was, according to the only witness with railroading experience who examined it prior to removal, old and deteriorated. It was not designed or constructed to bear those weights common to modern rail traffic. It was not repairable to a usable state and had only minimal scrap value. Nothing connected with Spur 1 was salvageable. Under these circumstances we can award no damages because there has been no compensable loss. No damages or harm flowed from the removal of the worthless Spur 1.

We do not condone the removal of Spur 1 from MILLER'S property without his consent, and we do not hold that MILLER is not entitled to an easement across MCIDA's property for the construction of a new siding. (Lower Court Opinion pp. 7–8)

In its Adjudication and Decree Nisi, the court awarded appellants $500.00 as "nominal damages for the removal of Spur 1." Appellants filed exceptions thereto which were denied by the court *en banc*. This appeal followed.

Appellants contend that the court below erred in denying compensatory damages to cover the cost of replacing the dismantled spur line and in failing to award punitive damages, or to even make findings of fact and conclusions of law on the question concerning the seriousness of appellees' actions in removing the spur line. Appellees argue that there is sufficient evidence in the record to support the court's determination in refusing to award compensatory damages and that the award of "nominal damages" in this case relates not to nominal compensatory damages but rather to an award of punitive damages. The latter argument is based on the court's adjudication, *supra*, which states that the appellants suffered no compensable loss for the removal of the "old", "deteriorated" and "worthless" spur. Thus, the court's award of "nominal damages", appellees argue, can only be viewed as punitive in nature for their improper conduct in removing the spur without appellants' consent.

■ Appellants' first contention must be rejected. We cannot reverse or modify a final decree unless there has

been an error of law, an abuse of discretion, or if the findings, affirmed by the court *en banc*, are not supported by the record or there has been a capricious disbelief of the credible evidence. *In Re Estate of Hastings,* 479 Pa. 122, 387 A.2d 865 (1978).

█ In the instant case, one of the appellees' witnesses, an expert with thirty-eight (38) years of experience in repairing, constructing and dismantling railroad track, testified to the following:

BY MR. KNEPP [Counsel]:

Q. Mr. Molek, did you inspect the track between the two points that your marked on Spur 1?

A. Yes.

Q. And using my copy of the Exhibit, what was the condition of the track in the area of approximately the red lines that are on my piece of paper that Mr. Miller's familiar with?

A. It was found the rails being of 80 and 85 pounds per yard, original size, were very badly deteriorated. The bases were destroyed beyond the point of support by the fasteners. The rails were lifted without any disturbance of the ties. The track gauge was only supported by compacted earth off to the sides. The ties were not removed because the ties stayed in place along with the basteners. Only the rails were removed, that consisted of approximately 66% of the area across the premises that are shaded. I wasn't sure at the time, not knowing conditions that existed. I did no measuring.

\*      \*      \*      \*      \*      \*

Q. Now, going back to my question, Mr. Molek, was this track that was removed, was it suitable for carrying a car?

A. No.

Q. Why?

A. It was probably laid in the 1920's. Badly deteriorated. Designed for probably 30 to 40 ton locomotives. Designed and build for 30—40 ton locomotives. The

design hindered service with Conrail servicing that particular trackage exerts unnecessary and excessive pressure which causes damage to the trackage. Conrail's using in excess of 100 ton. (N.T. 82–83, 84–85) This testimony provided ample support for the court's decision.

■ Appellants also challenge the court's failure to award punitive damages as well as the court's failure to make findings and conclusions of law in its adjudication. Appellants admit that although they prayed for punitive damages in their complaint, they did not make a formal request for specific findings of fact or law on this issue prior to the court's adjudication and decree nisi. They did, however, raise an exception to the court *en banc* on this point, which was denied without discussion.

### ORDER

Now, December 29, 1981, it appearing that certain matters were raised by Plaintiffs' and Defendants' Exceptions To Adjudication and Decree Nisi which appeared to have arguable merit but which were rectified in that substantial justice was accomplished among the parties by Adjudication filed in action of Mifflin County Industrial Development Authority versus Lester S. Miller, Jr., and Juniata Foods, Inc., to Civil Action No. 1829 of 1980, Plaintiffs' and Defendants' Exceptions to Adjudication and Decree Nisi are overruled, and the Prothonotary is directed to enter the Decree Nisi as the Final Decree.

We do not understand the court *en banc*'s use of a related action to declare that "substantial justice" has been done in this case even though the claims raised are of "arguable merit". This explanation is vague and invites confusion. There is no question in this case that appellants established liability and, therefore, upon a proper showing, punitive damages could have been awarded. *Rhoads v. Heberling,* 306 Pa.Super. 35, 451 A.2d 1378 (1982). "Pennsylvania has adopted the rule of punitive damages as set forth in § 908 of the Restatement of Torts and the comments thereunder. Section 908(1) provides: ' "Punitive

damages" are damages other than compensatory or nominal damages awarded against a person to punish him for his outrageous conduct.' " *Focht.v. Rabada*, 217 Pa.Super. 35, 38, 268 A.2d 157, 159 (1970). However, we do not know what the court has ruled concerning punitive damages. The court's failure to discuss or consider the issue of punitive damages must be rectified to comply with Pa.R.C.P. 1517(a). See, *Wade v. S.J. Groves & Sons, Co.*, 283 Pa.Super. 464, 424 A.2d 902 (1981); *Frowen v. Blank*, 242 Pa.Super. 276, 363 A.2d 1267 (1976), later app. 266 Pa.Super. 145, 403 A.2d 585 (1979), *rev'd* 493 Pa. 137, 425 A.2d 412 (1981).

Consequently, we remand the case to the court below for specific findings of fact and conclusions of law on the issue of punitive damages and to make an award if it believes that such an award is proper. Compliance is required within sixty (60) days from the date of this order. Jurisdiction is retained by this court pending remand.