504 A.2d 917

**Robert D. MURPHEY, Appellant,**

**v.**

**Catherine HATALA, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1985.

Filed Feb. 6, 1986.

434

436

Elaine Smith, Philadelphia, for appellant.

Andrew M. Knowlton, Philadelphia, for appellee.

Before McEWEN, MONTEMURO and TAMILIA, JJ.

MONTEMURO, Judge:

This is an appeal by appellant/father from an order granting sole physical custody of the parties' six-year-old son, Brendan, to appellee/mother.

The parties were married in November 1977 and separated in March 1983. Following their separation, the parties mutually agreed to a joint physical and legal custody arrangement for their son. In July of 1984, appellant filed a complaint in divorce. The parties abided by their mutual agreement for twenty-seven (27) months. Under this agreement, Brendan spent alternating days of the week with each parent. This system afforded Brendan the opportunity to spend three (3) days of the week with appellant and four (4) days with appellee. The parties live in close proximity to each other in Center City Philadelphia. Both parents live far enough away from Brendan's school that driving is necessary.

Appellant filed a petition for confirmation of the mutually agreed upon joint custody arrangement. Following an extensive hearing, which included testimony from a clinical

sociologist and a licensed psychologist, the court entered the following order:

AND NOW, this 29th day of May, 1985, after testimony and argument before the Honorable Frank M. Jackson, Appellant's Petition to Confirm Joint Legal and Joint Physical Custody, it is hereby ordered that Confirmation of Custody of the Child, BRENDAN DYLAN MURPHEY is awarded to mother, CATHERINE HATALA with Shared Custody in Father, ROBERT MURPHEY, who shall have BRENDAN on alternate weekends from the close of school on Friday to the commencement of school on Monday morning commencing May 24, 1985. Father to have BRENDAN every Wednesday from close of school to commencement of school on Thursday morning. In the event that Father commences teaching on Wednesday evening, he may choose to substitute either Tuesday or Thursday. Both parties shall alternate the following holidays: Fourth of July; Labor Day; Memorial Day; Thanksgiving; Christmas; New Years and Easter and alternating each year commencing with Father on Fourth of July, 1985. During summer vacation, Father shall have three weeks of his choice. During the Christmas and New Years vacation, both parties shall split the period equally.

A supersedeas was requested by counsel for Father, ROBERT MURPHEY, and is denied. Counseling is directed by both parties and child.

Appellant has presented three issues for our review:

I.  Did the lower court abuse its discretion in granting sole custody of minor child to Appellee/Mother absent any evidence on the record to support a finding that a sole custody arrangement is in the best interest of the child?

II. Did the lower court abuse its discretion by awarding sole custody to Appellee/Mother when the record can support no finding that the Appellee/Mother is the more nurturing parent and in

contravention of the Commonwealth's Custody and Grandparents Visitation Act?

III. Did the lower court exceed the scope of its judicial authority by granting sole custody sua sponte when the issue before the court was a Petition to Confirm Joint Legal and Joint Physical Custody?

Appellant's brief at 2.

We shall first address appellant's third issue. Having examined the record, the briefs of counsel and the opinion of the court below, we agree with the court below that there is no merit whatsoever in this claim. We adopt the court's opinion as to this issue and see no need to write further on this matter.[1]

Our analysis of appellant's first two issues necessarily requires us to first set forth certain well-settled rules which govern appellate review of these difficult and heart-rending custody cases.

The lodestar, of course, is that in custody cases the paramount concern of the court is the best interest of the child, including the child's physical, intellectual, emotional and spiritual well-being. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977).

The appellate court's scope of review in custody cases is of the broadest type. This broad power is limited to the extent that an appellate court may not nullify the fact finding function of the hearing judge. We are empowered to form our own independent deductions and inferences from the facts found by the hearing judge, but may only interfere with the decisions of the hearing court where there has been a gross abuse of discretion. We must

---

1. The lower court bases its disposition in this issue on the Custody and Grandparents Visitaton Act, Act of November 5, 1981, P.L. 322, No. 115, 23 P.S. § 1004, which states:

   In making an order for custody to either parent, individually, the court shall consider, among other factors, which parent is more likely to encourage, permit and allow frequent and continuing contact including physical access between the noncustodial parent and the child or children. The court shall issue sole custody when it is in the best interest of the child or children.

determine whether the trial court's factual findings support the trial court's factual conclusions, but we may not disturb these conclusions unless they are unreasonable in light of the court's factual findings. *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984).

■ Our appellate function is to make an independent judgment, based on the testimony and evidence before us, that is in the best interest of the child. *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 488 Pa. 437, 292 A.2d 380 (1972). We must make an independent examination of the record and make an order on the merits of the case which is right, just and will serve the best interest of the child. *Spells v. Spells*, 250 Pa.Super. 168, 378 A.2d 879 (1977). *Davidyan v. Davidyan*, 230 Pa.Super. 599, 327 A.2d 145 (1974). "After we take full account of the hearing judge's reasoning, still, we must be easy in our own conscience that the judge's award will serve the best interest of the child, or children, in question." *Trefsgar v. Trefsgar*, 261 Pa.Super. 1, 9, 395 A.2d 273, 277 (1978) (Spaeth, J., concurring).

■ Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. *Mielcuszny v. Rosol*, 317 Pa. 91, 176 A. 236 (1934); *Commonwealth ex rel. Berman v. Berman*, 289 Pa.Super. 91, 432 A.2d 1066 (1981). An abuse of discretion is also made out where "[i]t appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence." *In re Masciantonio's Estate*, 392 Pa. 362, 367, 141 A.2d 362, 365 (1958). *Miller v. Mifflin County Industrial Development Authority*, 319 Pa.Super. 188, 465 A.2d 1293 (1983).

We have carefully reviewed the entire record and after applying the above guidelines to the evidence, we are constrained to hold that the hearing judge has abused his

discretion by ignoring or disbelieving uncontradicted testimony from the parties' three expert witnesses and by making findings that are not predicated on competent evidence in the record. Further, we are not convinced that the court's order serves the best interest of the child in question.

■ On review we must first ascertain what the hearing judge's findings of fact are and whether those findings are supported by competent evidence. *Commonwealth ex rel. Myers v. Myers,* 468 Pa. 134, 360 A.2d 587 (1976). We must then determine whether the factual findings that are supported by the evidence in the record support the hearing court's ultimate conclusions. *Commonwealth ex rel. Robinson v. Robinson, supra.*

The hearing court here has grounded its decision to grant sole custody to appellee upon the following findings: first, that the parties have insurmountable problems in their relationship which would render a shared custody scheme unworkable; second, that appellant is at a disadvantage due to his evening teaching schedule; and finally, that the marital home is Brendan's psychological base, hence sole custody should be awarded to appellee because she resides in the marital home.

■ We find these "facts" unsupported by the record. Because of this, we are not bound by these factual findings. The hearing judge has abused his discretion by making determinations unsupported by the record. *See Commonwealth ex rel. Spriggs v. Carson, supra.*

■ The hearing judge's primary reason for denying appellant's petition for confirmation of shared physical custody is based on his findings in respect to the relationship the parents had with each other. The hearing court articulated its reasoning by stating:

"[i]t would be counterproductive to require these two people to share equal responsibility for the child's upbringing.... [S]o long as 'enormous' disagreements exist on day to day matters, the child must be afforded the

stability of a sole custody arrangement. This is not to say that the father is any less loving or concerned as a parent than the mother. Our decision is not based on any findings of deficiency on his part vis-a-vis the child but rather on the obvious failure of both parents to overcome their personal differences in a shared custody setting. Hearing court opinion at 7.

The hearing judge places great emphasis on the parties' disagreements on day to day matters and practical problems in regard to Brendan's two home living arrangements. He finds these problems to be of such magnitude as to preclude any form of custody other than sole custody.

We acknowledge the testimony in the record as to the discord between the parties and as to their day to day problems and inconveniences. There is also extensive testimony, however, from all three expert witnesses, and the parties themselves, stating that *the majority of these problems* stem from the friction caused by the frequency of Brendan's exchange between the parties. N.T. May 29, 1985 at 10, 15, 53, 54, 70, 102, 105, 157. All the experts testified that these problems could be overcome with a custody plan affording Brendan larger blocks of time with each parent, thereby lessening the contact time between the parents and consequently reducing their conflicts. *Id.* at 15, 22, 54, 55, 61, 163. The experts offered their opinions as to what type of custody arrangement would work best in this particular case. Dr. Margaret Cotroneo, a family therapist testifying on behalf of appellant, opined, "I did recommend a joint custody arrangement every two weeks with one parent, and then two weeks with the other parent, with some guidelines...." *Id.* at 12. "[I] recommended two weeks on and two weeks off to try to minimize as much as possible the conflicting that seems to arise every time a change was made." *Id.* at 15. Dr. Cotroneo went on to say that in this case shared custody would work even if both parties did not support it. *Id.* at 16. Dr. Stanley Clawar, Ph.D., a sociologist called as an expert witness for appellant, stated that he felt "Brendan ... can handle and

benefit from larger blocks of time. This would reduce the conflict time between the parents. He is already shared equally in the life of both parents.... I would recommend the biweekly mode." *Id.* at 54–55. Dr. Clawar continued, "There have been conflicts and some differences but if you eliminate the basis for those, which would be expanding the time and detailing holidays, vacations, birthdays and so on, it would seem that Brendan would prosper from the continued contact with both of his parents on an expanded time block basis." *Id.* at 61. Dr. Clawar also voiced his opinion that shared custody can work in cases where the parents would prefer another arrangement. *Id.* at 57. Appellant's witness, Dr. Martin McGurrin, Ph.D., a psychologist, testified that until the parties resolved the problems between them "any custody arrangements will be problematic." *Id.* at 152. This expert could not give a decisive opinion as to what type of custody plan would be best in this case. At one point he stated, "In this situation it seems that the biweekly arrangement increases the risk that exchanges of messages and encounters which have had a history of being argumentative will be increased." *Id.* at 160. Dr. McGurrin gave no indication as to why he felt this was so. He then went on to say, "Any arrangement ... in which they have to go through exchange processes, it seems to me, increases the chance of them becoming involved in arguments compared to the arrangement in which there is a reduction in the exchange process." *Id.* at 163. In our view, this statement by appellant's own witness lends support to the argument that a bi-weekly plan would be preferable to the plan ordered by the hearing court. Later Dr. McGurrin admitted that an order calling for Brendan to spend blocks of time with each parent and ordering the parties to attend counseling sessions would be a workable arrangement. *Id.* at 165. Dr. McGurrin also admitted that he had no factual basis for recommending sole custody of Brendan to one of the parties over shared custody. *Id.* at 168.

The hearing judge chose to reject the recommendations of Dr. Cotroneo and Dr. Clawar and stated that its order was supported by the testimony of Dr. McGurrin. Hearing court opinion at 6–7. After a thorough reading of all the expert testimony, we are at a loss to find sufficient evidence from which the judge could form his findings. It is clear from the record that Dr. McGurrin does not affirmatively say that shared custody would not work in this situation. What he does say is that an arrangement where there is less contact between the parties would be the best solution to this particular problem. Given this, the hearing court's order is at odds with not only Dr. Clawar's and Dr. Cotroneo's testimony, but is also at odds with the expert's testimony that the court chose to credit, i.e., Dr. McGurrin's.

We are aware of the law that the trier of fact is not bound by the testimony of any expert witness and is under no obligation to accept the conclusions of an expert witness. *U.S. Steel Corp. v. Hoge,* 304 Pa.Super. 182, 450 A.2d 162 (1982); *Stacey v. Thrower Trucking, Inc.,* 253 Pa.Super. 150, 384 A.2d 1274 (1978). However, this court held in *Straub v. Tyahla,* 274 Pa.Super. 411, 418 A.2d 472 (1980), that it was an abuse of discretion for the hearing judge to accept as unpersuasive, and to totally discount, uncontradicted expert testimony. Upon appellate review of the record, our court in *Straub* was convinced as to the competence of the expert testimony and reversed the hearing court's order. We have a similar situation in the case before us. We find the trial judge's disregard for uncontradicted expert testimony to be an abuse of discretion. *See also In re Masciantonio's Estate, supra; Miller v. Mifflin County Industrial Development Authority, supra.* The hearing judge's conclusion that sole physical custody is in the best interest of this child is not based on competent evidence, and we need not accept this finding. *Commonwealth ex rel. Robinson v. Robinson, supra.*

■ We are convinced that the evidence *sub judice* supports an award of shared custody between the parties. We

recognize that the twenty-seven (27) month voluntary shared custody plan instituted prior to the hearing court's award of sole physical custody to appellee failed to be a workable solution to a very difficult problem. However, it is clear from the record that prior to the parties' separation, both parents were very involved in Brendan's life and participated actively in all aspects of child rearing. The record also establishes that there has never been a period in Brendan's life that he has not spent equal time with both of his parents.

Dr. Clawar testified at the hearing that "Brendan's whole life has been involvement with his mother and father in a very strong and constructive way in both their lives...." N.T. May 29, 1985 at 55. Dr. Clawar also stated that Brendan "indicated that he would like to have no less time with either parent and felt that it was very important that he see his parents about the same [amount of] time...." *Id.* at 53. Dr. Clawar continued "This child has had two [parents] his whole life. To modify that now would really make a big change for him, a change for him that I think would be very problematic." *Id.* at 63.

To this child, a shared custody scheme is the norm. When asked how a sole custody arrangement would affect Brendan, Dr. Clawar testified, "I think to exclude him from the life of one of his parents at this point would cause very serious consequences to him. In terms of what normally happens to children under those conditions is possible educational disfunction, peer group problems.... I think he would experience a grieving process and a significant loss." *Id.* at 55, 56.

The hearing court relies on *In re Wesley J.K.*, 299 Pa.Super. 504, 445 A.2d 1243 (1982), to support its proposition that shared custody is not favored in situations where there is parental conflict. In *In re Wesley J.K.*, our court suggested guidelines for determining when shared custody is appropriate. Four criteria are set forth in *Wesley* for the hearing court's consideration. First, both parents must be fit and capable of making mature child-rearing decisions,

and both parents must be willing to provide care and love for their child. There is no question that both appellee and appellant fulfill these requirements. Second, both parents must express a desire for continued active involvement in the child's life. Clearly this criterian is met by the parties. Third, the child must recognize both parents as sources of love and security. It is undisputed that Brendan is strongly bonded to both parents and is happy in both homes. Last, "a minimal degree of cooperation between the natural parents" is necessary. "This feature does not translate into a requirement that the parents have an amicable relationship." *Id.*, 299 Pa.Superior Ct. at 516, 445 A.2d at 1249, *quoting Beck v. Beck*, 86 N.J. 480, 498, 432 A.2d 63, 71 (1981). Our review of the record provides us with considerable evidence of the parties' cooperation in protecting Brendan's best interests. We acknowledge the problems encountered by the parties during their twenty-seven (27) month self fashioned custody plan but find the level of cooperation exhibited to be sufficient to meet the requirements of the fourth *Wesley* criterion.

It is clear that the hearing judge had before him a situation where the relative merits of the parents are equal. There is extensive testimony that a shared physical custody plan based on a biweekly alternation of the child would be in the best interest of the child. We agree with the hearing judge's conclusion that the voluntary shared physical custody plan fashioned by the parties did not work, but we disagree with his conclusion that sole physical custody in appellee is the better solution.

The courts of this Commonwealth are afforded the option of awarding shared physical custody in situations where the award is in harmony with the child's best interest. "An order for shared custody may be awarded by the court when it is in the best interest of the child or children and: (1) upon application of one or both parents." 23 P.S. § 1005, Custody and Grandparents Visitation Act.

We feel the circumstances of this case warranted the exercise of the hearing judge's authority to grant appel-

lant's application for confirmation of shared custody. *See Ellingsen v. Magsamen*, 337 Pa.Super. 14, 486 A.2d 456 (1984); *In re Wesley J.K., supra.*

In appellant's second issue we are asked to consider whether the lower court abused its discretion in awarding sole physical custody absent support in the record that appellee is the more nurturing parent.

Our court in *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977), held that in custody cases where the dispute is between the parents, the "controlling statute provides the standard to be applied: the Court is to 'remand such child [either to the father or to the mother] . . ., regard first being had to the best interest and permanent welfare of said child.' Act of June 26, 1895, P.L. 316, § 2, 48 P.S. § 92." *Id.*, 249 Pa.Superior Ct. at 280, 376 A.2d at 651.

The burden of proving superior fitness as a parent rests equally with both parties; thus, the hearing judge must award custody to the party who is proven by a preponderance of the evidence to be superior. *In re Custody of Hernandez, supra.*

The hearing court articulated its reasoning in awarding sole custody of Brendan to appellee as opposed to appellant. The judge stated that appellant was at a disadvantage because his teaching schedule required him to be away during the early evening hours two nights a week. Hearing court opinion at 8. The testimony the judge is referring to stated that in 1984 the appellant taught school two nights a week, and he finished in time to pick up Brendan at 7 o'clock. There is nothing in the record establishing that this is appellant's permanent work schedule or that appellant maintained the schedule at the time of the hearing. In fact, appellant spoke of this teaching position in the past tense leading us to believe that appellant is no longer employed as a teacher of this night class. *Id.* at 82–84. Apart from the foregoing, this court has held that when a working parent provides good care for the child in question in the parent's absence, the parent's employment

cannot be a factor weighed against him by the court. *Brown v. Brown,* 206 Pa.Super. 439, 213 A.2d 395 (1965). *See also In re Custody of Neal,* 260 Pa.Super. 151, 393 A.2d 1057 (1978). We find that there is sufficient testimony establishing that Brendan was well taken care of during appellant's short absences, and hold that appellant's employment was improperly considered by the hearing judge.

■ The other factor on which the hearing judge based his determination that sole custody is best awarded to appellee was announced by the judge at the conclusion of the hearing in a ruling from the bench, and then reiterated in the judge's written opinion some four (4) months later. The hearing judge felt that Brendan identifies appellee's residence as his primary home. The judge refers to Dr. McGurrin's testimony (N.T. May 29, 1985, at 169) as the basis for this conclusion.

In choosing to credit this small section of Dr. McGurrin's testimony, the hearing judge once again ignored uncontradicted testimony from both Dr. McGurrin and appellant's witness, Dr. Cotroneo. Dr. McGurrin also testified that a two home living situation in no way undermines Brendan's stability or well-being. He stated "[i]t is not detrimental for him [Brendan] to live in two different houses...." *Id.* at 156. This sentiment was echoed by Dr. Cotroneo, who also stated that children are less upset about a two home living arrangement than adults may be. *Id.* at 19. Dr. Cotroneo went on to state that Brendan is not confused by his two home living arrangement and does not have any problem with the situation. *Id.* at 24.

We find the hearing judge's conclusion, that it is in Brendan's best interest that custody be awarded to appellee, is not based on competent evidence, and that appellee has not proven by a preponderance of the evidence that she is the superior parent. We repeat that we are not bound by the hearing court's conclusions and hold that the court's reliance on unsupported facts in forming its order represents an abuse of discretion.

For the reasons stated above we reverse and remand for an order not inconsistent with this opinion. Jurisdiction is not retained.