J-A05025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOSEPH A. PIOLE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES J. PUPICH, | |
| Appellant | No. 1002 WDA 2016 |

Appeal from the Order Entered June 29, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): G.D. 06-23189

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and MOULTON, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 27, 2017**

Appellant, Charles J. Pupich, appeals from the trial court's June 29, 2016 order granting Appellee's, Joseph A. Piole, motion for post-trial relief and awarding a new trial.  For the reasons stated herein, we affirm.

The trial court summarized the factual background and procedural history of this case as follows:

> Shortly after the jury in this civil trial rendered its verdict in favor of Mr. Pupich, I received evidence that jurors improperly searched the internet and found criminal charges of income tax evasion against Mr. Piole.  I held two hearings on this topic, from which I determined that the jury had been prejudiced by this.  I therefore granted Mr. Piole's request for a new trial.  Mr. Pupich has appealed my decision to the Superior Court of Pennsylvania, and this Opinion explains why I ordered a new trial.  ***See*** Pennsylvania Rule of Appellate Procedure No. 1925(a).
>
> Mr. Piole bought a building located at 1939 Babcock Boulevard in 1987, but in 1994 "lost the building" due to a debt owed [to] the Internal Revenue Service.  Jury Trial December 1-3, 2015 transcript ("T." hereafter), p. 181.  Mr. Pupich bought the

building in 2000 and began leasing it to Mr. Piole in June of 2001. Early in the morning on September 29, 2004[,] much of the building and its contents were damaged by a fire. Neither Mr. Piole[,] nor Mr. Pupich[,] was determined to be at fault for causing the fire.

If Mr. Pupich wanted to terminate the lease with Mr. Piole due to the fire, the lease gave him the option to notify Mr. Piole of termination of the lease within 45 days after the fire. This notice was therefore required to be given by November 13, 2004, but Mr. Pupich did not send it until December 23, 2004. In 2006[,] Mr. Piole initiated this proceeding by suing Mr. Pupich for breach of contract for not notifying him of the termination of the lease within 45 days of the fire. Mr. Piole's lawsuit also alleged that Mr. Pupich breached an oral agreement to use insurance proceeds to pay Mr. Piole for Mr. Piole's furniture, equipment and other personalty destroyed by the fire.

After the parties selected the jury, but before the trial began, there was an on-the-record discussion of Mr. Piole's motion in limine to exclude all testimony and evidence regarding Mr. Piole's criminal record. With Mr. Piole's convictions being more than 20 years old, Mr. Pupich's counsel agreed the criminal proceedings were not relevant. *See* T., pp. 5-6. I, therefore, ordered the exclusion of all evidence and testimony concerning Mr. Piole's criminal record.

There were no witnesses to the alleged oral agreement to pay for Mr. Piole's personalty, and Mr. Pupich denied ever having made such an agreement. With Mr. Piole insisting Mr. Pupuch told him that insurance proceeds would be used to pay for his personalty that was destroyed by the fire, the jury had to determine who was telling the truth. The jury's written verdict was that Mr. Pupich did not enter into such an oral agreement[1]. [*sic*] Less than a week later, Mr. Piole filed a motion for post-trial relief which alleged that jurors used a cell phone to search the internet and find Mr. Piole was arrested for income tax evasion. I presided over two evidentiary hearings concerning this motion for post-trial relief. The witnesses at the hearings were the jury's foreman [Juror 5], two other jurors [Jurors 7 and 9] who allegedly found Mr. Piole's tax evasion arrest on a cell phone, a non-juror[, named Lori Sarver,] who allegedly witnessed the two jurors searching the internet for Mr. Piole[,] and a forensic computer and mobile device analyst hired as an expert witness by Mr. Pupich. I gave considerable thought to

the testimony from the five witnesses before reaching my decision, which was to grant Mr. Piole a new trial.

[1] The written verdict also contained the jury's determination that Mr. Pupich did not breach the written lease.

Trial Court Opinion (TCO), 9/12/2016, at 1-3 (headings omitted).

On July 12, 2016, Mr. Pupich filed a timely notice of appeal from the trial court's order granting a new trial. Thereafter, he filed a timely concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On appeal, Mr. Pupich raises the following issues for our review:

A. Whether the trial court committed reversible error and abused its discretion when it granted [Mr.] Piole's request for a new trial on the basis that juror's [*sic*] allegedly received extraneous information related to a tax evasion arrest, when there was extensive trial testimony presented by [Mr.] Piole that he owed the federal government in excess of $750,000.00 in back taxes and lost the original property due to failure to pay taxes.

B. Whether the trial court committed reversible error and abused its discretion when it granted [Mr.] Piole's request for a new trial, when the alleged extraneous information of an arrest for tax evasion did not relate to the central issue of this case which was whether [Mr.] Pupich breached an alleged oral contract to use his insurance money to pay for a fire, after [Mr.] Piole allowed his insurance with a subtenant to lapse.

C. Whether the trial court committed reversible error and abused its discretion when it granted [Mr.] Piole's request for a new trial when the alleged extraneous information of an arrest for tax evasion was not emotional, inflammatory nor prejudicial in nature due to the evidence that [Mr.] Piole owed in excess of $750,000.00 in back taxes and lost the subject property due to failure to pay taxes.

D. Whether the trial court committed reversible error and abused its discretion when the trial court ignored an affidavit of Juror Number 5 which failed to indicate any

information regarding any arrest or conviction for tax evasion[.]

E. Whether the trial court committed reversible error and abused its discretion when the trial court totally disregarded uncontradicted expert testimony of a forensic expert that Juror 9's cell phone was not searched during the relevant timeframe of December 1 to December 3, 2015[.]

Mr. Pupich's Brief at 5-6 (unnecessary capitalization omitted). We address these issues out of order for ease of disposition.

We apply the following standard of review:

In reviewing a trial court's decision to grant or deny a motion for a new trial, "it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." *Harman v. Borah*, 562 Pa. 455, 466, 756 A.2d 1116, 1121-22 (2000). Moreover, "[a] new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." *Id.* at 467, 756 A.2d at 1122 (citations omitted).

Under *Harman*, we must first determine whether we agree with the trial court that a factual, legal or discretionary mistake was, or was not, made. *Id.* If we agree with the trial court's determination that there were no prejudicial mistakes at trial, then the decision to deny a new trial must stand. If we discern that a mistake was made at trial, however, we must then determine whether the trial court abused its discretion in ruling on the motion for a new trial. *Id.* at 468, 756 A.2d at 1123. A trial court abuses its discretion by rendering a judgment that is manifestly unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will. *Id.* at 469, 756 A.2d at 1123 (citations omitted).

*Boucher v. Pennsylvania Hosp.*, 831 A.2d 623, 627 (Pa. Super. 2003).

Initially, we determine that Mr. Pupich waived his issue regarding "[w]hether the trial court committed reversible error and abused its

discretion when the trial court ignored an affidavit of Juror Number 5 which failed to indicate any information regarding any arrest or conviction for tax evasion[.]" *See* Mr. Pupich's Brief at 6 (unnecessary capitalization omitted). This issue is not preserved in Mr. Pupich's concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement … are waived."); *see also* Trial Court Order, 7/13/2016, at 1 ("Any issue not properly included in the Concise Statement of the Errors Complained of on Appeal … shall be deemed waived."). We therefore do not consider it. Moreover, even if the issue were properly preserved in Mr. Pupich's concise statement, he would not convince us that the trial court erred and/or abused its discretion by purportedly ignoring the affidavit, given Juror 5's testimony at the evidentiary hearing on February 19, 2016.[1]

_____

[1] Juror 5 testified to the following:

> [Mr. Piole's attorney:] Do you remember telling in that same conversation, telling them, "Sorry, dude, but they were just up against you from when they heard and found out about the taxes and not paying back the government. The facts of the case really didn't matter in spite of the defendant lying the entire time on the stand. Your IRS past history and criminal convictions blew the whole case for you."
>
> [Juror 5:] Yes, sir.
>
> …
>
> [Mr. Piole's attorney:] Now who was the one that told you about criminal convictions?

*(Footnote Continued Next Page)*

- 5 -

Next, Mr. Pupich argues that "[t]he expert testimony of the forensic examiner was uncontradicted, therefore, the … trial court abused its discretion in disregarding this testimony." Mr. Pupich's Brief at 18 (emphasis and unnecessary capitalization omitted). Specifically, Mr. Pupich asserts that "the expert found no 'hits' using the term Piole on the cell [phone,]" and that "this testimony was not contradicted and [Mr.] Piole had the similar right to have the cell phone analyzed." **Id.** at 20 (citations to record omitted). In support, Mr. Pupich cites to **Murphey v. Hatala**, 504 A.2d 917 (Pa. Super. 1986), for the proposition that a trial court's disregard for uncontradicted expert testimony is an abuse of discretion. Mr. Pupich's Brief at 20-21. According to the **Murphey** Court, "[a]n abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly

_____
*(Footnote Continued)*

> [Juror 5:] It was discussed in the deliberation room. And it was brought up amongst the discussion. To be honest, I can't finger exactly who it was. The key thing I do remember was the term of three-quarters of a million dollars of debt was discussed, and that [Mr. Piole] was convicted on charges, that he was a criminal.
>
> …
>
> [Mr. Piole's attorney:] But you recall them talking about convictions?
>
> [Juror 5]: I'm going to use the word crime, criminal, not convictions. The word criminal, not convictions. Criminal, not convictions.

N.T. Hearing, 2/19/2016, at 25, 26, 38.

unreasonable as shown by the evidence of record, discretion is abused."

***Murphey***, 504 A.2d at 920 (citations omitted). Further, the ***Murphey***

opinion states that "[a]n abuse of discretion is also made out where it

appears from a review of the record that there is no evidence to support the

court's findings or that there is a capricious disbelief of evidence." ***Id.***

(citations, brackets, and internal quotation marks omitted). Notably, in

***Murphey***, we found an abuse of discretion where "the hearing judge …

ignor[ed] or disbelie[ved] uncontradicted testimony from the parties' three

expert witnesses and ***[made] findings that [were] not predicated on***

***competent evidence in the record.***" ***Id.*** (emphasis added). That is not

the case here.

In the case *sub judice*, the trial court explained:

> Mr. Pupich contends that my decision is not correct because "there was uncontradicted forensic expert testimony that the juror's cell phone was not used to look up extraneous information." Concise Statement, ¶ no. 1(a). This is a reference to the testimony of forensic computer and mobile device analyst Luis Kay, who was hired by Mr. Pupich to be an expert witness during the second evidentiary hearing on the motion for post-trial relief. On direct examination[,] Mr. Kay opined that Juror 9 had not searched for Mr. Piole during the days of the trial on the cell phone provided to him. I disagree with Mr. Pupich's assessment of Mr. Kay's testimony as "uncontradicted." On cross examination, Mr. Kay acknowledged that programs or applications exist that permanently delete cell phone files, but he was not familiar with them[2]. [*sic*] Juror 9 was asked about providing her cell phone for forensic examination on February 19, 2016[,] but did not deliver it to Mr. Kay until April 13, 2016. Thus, there was ample opportunity for deleting a search for Mr. Piole. Making deletion of the search more likely was Mr. Kay's testimony that the cell phone he examined showed absolutely no internet searches during the five day period that he examined.

In any event, Mr. Kay made no effort to verify forensically that the particular cell phone he evaluated was the one that Juror 9 likely was using on December 3, 2015. Having also heard the credible testimony of Ms. Sarver that Juror 9 looked up Mr. Piole on her cell phone, I found Mr. Kay's opinion that Juror 9 did not use her cell phone to look up Mr. Piole was not credible[3]. [*sic*] Therefore, my decision not to accept Mr. Kay's opinion was correct.

> [2] While Mr. Kay later testified during redirect examination that he would have found evidence of the use of such a program or application, since he previously testified he was not familiar with them, I did not believe him.

> [3] My assessment that Mr. Kay was not credible also was based on the potential for bias resulting from his employer being paid for his testimony by Mr. Pupich and Mr. Kay's lack of experience.

Even if my credibility evaluation is incorrect and Juror 9 did not look up Mr. Piole on the internet on December 3, 2015, Juror 5, the jury foreman, testified credibly that Mr. Piole's tax evasion conviction and/or Mr. Piole['s] being a criminal was discussed in the deliberations. Consistent with my order granting the motion in limine, there was no testimony during the trial about any criminal proceeding involving Mr. Piole. Therefore, even if Mr. Kay's opinion is correct and Juror 9 did not look up Mr. Piole on her cell phone, the jury still used some other method to improperly obtain and consider Mr. Piole's criminal conduct.

TCO at 5-6.

Based on the trial court's above analysis, we disagree that it abused its discretion by discounting the expert's opinion, as the trial court's findings were reasonable and had evidentiary support in the record.

Mr. Piole's remaining issues relate to his argument that "[a]ssuming [] *arguendo* that extraneous information about an arrest for tax evasion was presented to the jury[,] it does not violate the tripartite evaluation in **Carter** [**by Carter**] **v. United States Steel Corp.**, 604 A.2d 1010 (Pa. 1992)

[(plurality opinion)]." Mr. Piole's Brief at 21 (unnecessary capitalization omitted).[2] In **Carter**, our Supreme Court explained that:

> Once the existence of a potentially prejudicial extraneous influence has been established by competent testimony, the trial judge must assess the prejudicial effect of such influence. Because a trial judge is precluded from considering evidence concerning the subjective impact of an extraneous influence on any juror, it has been widely recognized that the test for determining the prejudicial effect of an extraneous influence is an objective one. In order to determine whether an extraneous influence is prejudicial, a trial judge must determine how an objective, typical juror would be affected by such an influence.

*Id.* at 1016 (citations omitted). Further, "[i]n determining the reasonable likelihood of prejudice, the trial judge should consider 1) whether the extraneous influence relates to a central issue in the case or merely involves a collateral issue; 2) whether the extraneous influence provided the jury with information they did not have before them at trial; and 3) whether the extraneous influence was emotional or inflammatory in nature." **Id.** at 1016-17 (footnote omitted).

First, Mr. Piole argues that, "[t]he extraneous influence of an arrest for tax evasion is a collateral issue and does not relate to the central issue of

---

[2] We note that "[i]t is well-settled that plurality opinions do not have precedential authority." **See Commonwealth v. Minor**, 647 A.2d 229, 231 n.3 (Pa. Super. 1994) (citations omitted). However, in **Pratt v. St. Christopher's Hosp.**, 866 A.2d 313 (Pa. 2005), our Supreme Court stated that, "in instances of post-verdict allegations of extraneous information and/or outside influence affecting jury deliberations, we adopt the objective test for prejudice as well as the associated guidelines that are set forth in the lead opinion in **Carter**, 529 Pa. 421-22, 604 A.2d at 1016-17." **Id.** at 324.

this case which is formation and breach of an oral contract." Mr. Piole's Brief at 23 (unnecessary capitalization and emphasis omitted). Mr. Piole contends that, "[t]o establish an oral contract, it must be established that (a) both parties manifested an intent to be bound by the terms of the oral contract, (b) the terms of the oral contract were sufficiently definite to be specifically enforced, and (c) there was mutuality of consideration." *Id.* at 24 (citing *York Excavating Co. v. Employers Ins. of Wausau*, 834 F. Supp. 733, 740 (M.D. Pa. 1993)). He asserts that, "an arrest for tax evasion does not relate to the central issue of the elements required for an oral contract[,]" *id.* at 24, and "[w]hether [Mr.] Piole fails to pay taxes or is arrested for tax evasion does not make it more or less likely that an oral contract existed or that it was breached." *Id.* at 25.

The trial court observed, however, that "during the closing argument to the jury[,] Mr. Pupich's counsel actually described Mr. Piole's credibility as the 'central issue[,]' and it is well known that a criminal conviction is the most devastating method for destroying a witness's credibility." TCO at 7 (citation omitted). Specifically, the trial court noted that, "[t]hroughout the trial, the existence of the oral contract that Mr. Pupich allegedly made to pay for the lost personalty was made to depend on Mr. Piole's credibility." *Id.* (citations to record omitted). *See* N.T. Jury Trial, 12/1/2015-12/3/2015, at 73-74 ("Now, Mr. Pupich will testify. And you're going to hear him testify, and you'll be the individual who will weigh the factors. You'll weigh the credibility of evidence. You'll weigh the testimony. You'll listen to these two

gentlemen. You'll determine who is the truth-teller."); *id.* at 399 ("It's a balance of credibility. We leave that -- that's what you're going to be doing for us is to weigh those issues of credibility. And I submit that because of that central issue that there is no oral contract. There never was any oral agreement in this case."); *id.* at 407-08 ("You listened to cross-examinations. You know who the truth-tellers are here. And based on that, my client and I are asking you, because you're going to get this verdict slip … Was there an oral contract between Mr. Piole and Mr. Pupich? No. That's what we're asking here today."). Thus, we agree with the trial court that "the tax evasion arrest/conviction relates to Mr. Piole's credibility by destroying it, and Mr. Piole's credibility undoubtedly was a central issue in the case." TCO at 8 (footnote omitted).[3] We therefore conclude that the first guideline from **Carter** and **Pratt** is satisfied.

Next, Mr. Pupich argues that, "[t]he extraneous influence of [Mr.] Piole's failure to pay taxes was information that was discussed throughout the trial and therefore was not prejudicial." Mr. Pupich's Brief at 26

_____

[3] The trial court also noted that:

> While Juror 9 apparently found on the internet, before deliberations began, that Mr. Piole was 'arrested,' Juror 5 heard 'criminal convictions' being discussed by the Jury during deliberations. It is inconsequential whether the extraneous influence was Mr. Piole's arrest or conviction as the destructive effect of Mr. Piole's credibility would be the same.

TCO at 8 n.4. We concur.

(unnecessary capitalization and emphasis omitted). While Mr. Pupich acknowledges that the trial court "granted a [m]otion in [l]imine that [Mr.] Piole's prior convictions would not enter into evidence[,]" and that "[i]t is undisputed that counsel for [Mr.] Pupich did not submit any evidence of [Mr.] Piole relating to any arrest or conviction for tax evasion[,]" he advances that "the knowledge of [Mr.] Piole's failure to pay taxes was obvious throughout the trial." *Id.* at 26-27 (citations to record omitted). Specifically, according to Mr. Pupich, "[Mr.] Piole's recalcitrant disregard for his obligation to pay taxes was presented when he 'opened the door' and stated he filed bankruptcy due to breach of the oral contract[,]" and, "[i]n response, [Mr.] Pupich's counsel was permitted to cross-examine based on the bankruptcy filing that [Mr.] Piole owed over $750,000.00 in back taxes, which triggered his bankruptcy." *Id.* at 26-27 (citations to record omitted). Thus, Mr. Pupich claims that "[t]he fact an 'arrest' for failure to pay taxes may have been submitted to the jury, does not place a significant new fact in front of the jury." *Id.* at 27.

The trial court, in contrast, concluded that "testimony as to Mr. Piole's debt to the Internal Revenue Service obviously does not equate to the jury['s] receiving evidence of his arrest or conviction for tax evasion during the trial." TCO at 9. Moreover, the court pointed out that if the jury had received information on Mr. Piole's tax evasion arrest/conviction during the course of trial, "it would have violated my pre-trial order that excluded all evidence and testimony concerning Mr. Piole's criminal record. But, there

was no objection, motion for a mistrial or other reference to that pre-trial order during the course of the trial because that order was not violated." *Id.* As such, the court concluded that "the information the jury received about Mr. Piole's tax evasion arrest/conviction was not provided at trial, which satisfies the second guideline from the **Carter** and **Pratt** cases." *Id.* at 10. Again, we agree. As the trial court discerned, there is a distinction between having a debt owed to the Internal Revenue Service and being arrested for/convicted of tax evasion. Accordingly, we conclude that the jury did not have the information regarding Mr. Pupich's arrest/conviction before them at trial.

Finally, Mr. Pupich states that, "[t]he extraneous influence of an arrest for tax evasion is neither[] inflammatory nor prejudicial." Mr. Pupich's Brief at 27 (unnecessary capitalization and emphasis omitted). Mr. Pupich reiterates that, "[t]he jury was aware of [Mr.] Piole's failure to pay taxes in the sum of [$]767,461.00. Given the presentation of evidence of failure to pay taxes, the assertion that the arrest for tax evasion was 'inflammatory' or 'prejudicial' cannot be supported." *Id.* (citation to record omitted). Furthermore, relying on the **Carter** case, Mr. Pupich insists that "[t]he Trial Judge gave clear jury instructions at the beginning of trial that the jurors were not to look at the internet or communicate on any of these matters on the internet or e-mail[,]" and that "[t]hese clear instructions prevent any prejudice from extraneous influence." *Id.* at 29-30 (citations to record omitted).

Despite Mr. Pupich's contentions, we deem the trial court's reasoning to be more compelling. Ultimately, the court concluded that, "Mr. Piole's arrest/conviction for tax evasion is emotional or inflammatory in nature, which satisfies the third guideline from *Carter* and *Pratt*." TCO at 10. The court also explained that the reaction of Juror 9, when she discovered the arrest, proved Mr. Pupich's argument was meritless; the trial court found that Juror 9 "said 'oh, my God, he was arrested for tax evasion[,]'" which the trial court said "undoubtedly was an expression of emotion." TCO at 10 (citation to record omitted). Additionally, the trial court suggests that an objective, typical juror would have also been affected by this type of information, noting that, "since a leading commentator describes the admission into evidence at trial of a criminal conviction as 'prejudicial' …, it is obvious that finding out about Mr. Piole's arrest/conviction for tax evasion outside of the trial also is prejudicial." TCO at 10 (citing Bernstein, *Pennsylvania Rules of Evidence* (2016 Edition), Rule 609, p. 492).

In conclusion, we agree with the trial court that the three guidelines set forth in *Carter* and *Pratt* support a reasonable likelihood of jury prejudice, and that the trial court did not abuse its discretion in granting Mr. Piole a new trial under these circumstances.

Order affirmed. Case remanded for a new trial. Jurisdiction relinquished.

J-A05025-17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/27/2017