J-S42025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| W.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.W. | : | |
| | : | |
| Appellant | : | No. 584 MDA 2017 |

Appeal from the Order Dated March 7, 2017
In the Court of Common Pleas of Berks County
Civil Division at No(s):  15-03514

BEFORE:   OLSON, MOULTON, JJ., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MOULTON, J.:                     **FILED AUGUST 24, 2017**

M.W. ("Father") appeals from the March 7, 2017 order[1] entered in the Berks County Court of Common Pleas awarding the parties shared legal custody, and granting W.W. ("Mother") primary physical custody and Father partial physical custody of K.W. ("Child") during the school year, with the parties to alternate weeks during the summer.  We affirm.

---

[1] Although noted received by the Berks County's Prothonotary's Office on March 8, 2017, and docketed March 8, 2017, there is no notation on the docket or otherwise that notice was given and that the order was entered for purposes of Pa.R.C.P. 236(b).  ***See Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given").  ***See also*** Pa.R.A.P. 108(b) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)").  We caution the Berks County's Prothonotary's Office as to compliance with the rules regarding the entry of orders.

The trial court summarized the relevant procedural and factual history, in part, as follows:

> 3.  The parties are the natural parents of [Child], born [in September 2011].
>
> 4.  The parties were married on September 11, 2011. They separated in February 2015 and divorced in September of 2015.
>
> 5.  Mother resides in the Annville-Cleona Area School District. The next school year begins on August 28, 2017.
>
> 6.  Father resides in the Boyertown Area School District. The next school year begins on August 28, 2017.
>
> 7.  In February of 2015, Mother, along with [Child], moved from Father's home into the apartment of her co-worker, and now fiancé, [A.H.] in Boyertown, where they lived for two months.
>
> 8.  Mother and [A.H.] then moved to an apartment in Lebanon in anticipation of moving into their current residence in Annville, a house that was under renovation after it was purchased by [A.H.].
>
> 9.  Father's girlfriend, [R.N.], resides with him in his mother's home in Boyertown.
>
> 10.  The parties shared custody on a rotating basis . . . until Mother filed a Complaint for Custody on March 25, 2015, asking for primary physical custody because she wanted to enroll the child in a pre-K program three days a week.[2]

---

[2] Upon review of the record, it appears that Mother filed the Petition to Modify, not the original Complaint, due to her desire to enroll Child in a pre-K program. Petition to Modify, 4/27/16, at ¶2.a. *See also* N.T., 2/16/17, at 5.

11. The parties agreed to a stipulated Custody Order in May of 2015.[3] On April 27, 2016, Mother filed a Petition to Modify the existing Custody Order. On July 13, 2016, Father filed a Counterclaim for Custody, seeking primary physical custody. The matter went to a Master and both parties filed exceptions to the recommended order,[4] resulting in this child custody trial.

12. Mother and [A.H.] had a child together, [T.], born [in June 2016].

13. Mother works full time at Lowe's in Palmyra, five days a week, nine hours a day, sometimes on a weekend day, usually from 5:30 am until 5:00 pm. Her schedule varies and is flexible.

14. Father works full time at Saville's Diner in Boyertown. His hours are Sunday, Monday and Tuesday from 11:30 am until 8:30 pm, Thursday from 7:00 am until 1:30 pm, and Friday from 6:00 am until 2:00 pm.

15. The parties have problems communicating with each other and cooperating with medical and transportation issues concerning their child.

16. The parties' partners are willing to assist to facilitate communications on behalf of the child.

Decision and Order, 3/7/17, at 1-3 ("Trial Op."). **_See also_** Memorandum Opinion, 4/11/17, at 1-2 ("1925(a) Op.").

The trial court conducted a custody trial on February 16, 2017. Both Mother and Father were represented by counsel. Mother's fiancé, A.H.,

_____

[3] Pursuant to this agreed-upon order, the parties shared legal custody of Child. Mother had physical custody from Sunday at 7:00 p.m. to Wednesday at 7:00 p.m. and Father from Wednesday at 7:00 p.m. to Friday at 7:00 p.m., with the parties to alternate weekends. Custody Order, 5/6/15.

[4] The recommended order of the Master was similar to the previously agreed upon order. Recommended Order, 7/15/16.

testified and Mother testified on her own behalf. Father presented the testimony of his girlfriend, R.N.; his mother, S.W.; and J.H., a former babysitter for Child. Father also testified on his own behalf. On March 7, 2017, the court awarded the parties shared legal custody, and granted Mother primary physical custody and Father partial physical custody of Child during the school year, with the parties to alternate weeks during the summer.[5] Aside from establishing a holiday schedule, the order additionally provided instruction and guidance to the parties as to medications, return of clothing, transportation, and contact/emergency lists for daycare and/or school. Thereafter, on April 3, 2017, Father filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[6]

On appeal, Father raises the following issues for our review:

> I. Did the Court err in determining the Father should not have primary custody of the minor child?
>
> II. Did the Court err in determining that Mother's testimony and that of her boyfriend to be credible since they both have an extensive record of crimes of dishonesty?

---

[5] The trial court issued a decision, along with the March 7, 2017 order, that addressed and analyzed each of the Section 5328(a) factors. Subsequent to appeal, the court issued a memorandum opinion in support of its disposition dated April 7, 2017, and sent to counsel on April 11, 2017.

[6] Upon review of the record, Father additionally filed a petition to modify custody on April 27, 2017.

III. Did the Court err in accepting hearsay, not allowing witnesses and other evidence above objections from this counsel?

IV. Did the Court err in not granting more weight to the third party independent witness who testified that she babysat, was taken advantage of financially and used heavily by Mother?

V. Did the Court err in not favoring Father for Factor 3: The parental duties performed by each party?

VI. Did the Court err in favoring Mother for Factor 6: Any sibling relationships?

VII. Did the Court err in not favoring Father for Factor 8: Attempts of a party to turn the child against the other party?

VIII. Did the Court err in not favoring Father for Factor 9: Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for their needs?

IX. Did the Court err in not favoring Father for Factor 10: Which party is more likely to attend to the daily[] physical[,] emotional, developmental, educational and special needs of the child?

X. Did the Court err in not favoring Father for Factor 11: Proximity of the residences since Mother moved to be with her boyfriend over an hour away from her immediate family and Father?

XI. Did the Court err in not favoring Father for Factor 12: The parties' respective abilities to care for the child or make appropriate child care arrangements since the Court discounted the testimony of the third party independent witness who testified that Mother was never around?

XII. Did the Court err as a matter of law in finding that Father's girlfriend had a "criminal history" when she successfully completed the ARD program, and by not putting any weight into the fact that Mother and her boyfriend have an extensive history of criminal involvement, including jail time, while Father has no arrests?

Father's Br. at 8-9.

Our standard of review with regard to a custody matter is well-settled:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa.Super. 2015) (quoting *V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa.Super. 2012)).

We have stated:

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super. 2004)).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa.Super. 2010) (en banc), we stated the following regarding the abuse of discretion standard:

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quoting *Murphey v. Hatala*, 504 A.2d 917, 920 (Pa.Super. 1986)). Further, "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa.Super. 2007) (quoting *Arbet v. Arbet*, 863 A.2d 34, 39 (Pa.Super. 2004)).

Moreover,

"[w]hen a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396 (Pa.Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

*E.R.*, 129 A.3d at 527.

Section 5328 provides as follows:

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by

another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

With regard to the custody factors, we have stated as follows:

"**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A*., 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. *Id.*

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied*, . . . , 70 A.3d 808 ([Pa.] 2013). Section 5323(d) applies to cases involving custody and relocation. *A.M.S. v. M.R.C.*, 70 A.3d 830, 835 (Pa.Super. 2013).

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, . . . 68 A.3d 909 ([Pa.] 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa.Super. 2014).

Father's third issue relates to the admission of evidence. In all other issues, however, Father questions the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Father's Br. at 12-33. Father argues that his testimony and that of Child's former babysitter, J.H., should have been deemed more credible and given more weight by the trial court.[7] Father also contends that Mother's and her fiancé's testimony should have been discounted.[8] *Id.* at 15-17, 20-22, 32-

_____

[7] We note that while Father refers to J.H. as a "third-party independent witness," Father's Br. at 21-22, the trial court explained that this characterization disregards the dispute between J.H.'s father on one side and Mother and her fiancé on the other. N.T., 2/16/17, at 106.

[8] Father contends that Mother and her fiancé's prior convictions should have undermined their credibility. Father's Br. at 15-17. On this topic, we have held as follows:

> "For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict, or by plea of guilty or nolo contendere, shall be admitted if it involved dishonesty or false statement." Pa.R.E. 609(a). "Crimes involving dishonesty or false statement [are] commonly referred to as *crimen falsi* crimes." ***Commonwealth v. Moser***, 999 A.2d 602, 607 (Pa.Super. 2010). "*[C]rimen falsi* involves the element of falsehood, and includes everything which has a tendency to injuriously affect the administration of justice by the introduction of falsehood and fraud." ***Commonwealth v. Jones***, . . . 5 A.2d 804, 805 ([Pa.] 1939).

***Commonwealth v. Davis***, 17 A.3d 390, 395 (Pa.Super. 2011). ***See also*** Pa.R.E. 609.

The existence of such prior crimes, however, plainly does not mandate the conclusion that a witness's subsequent testimony is false. The role of
*(Footnote Continued Next Page)*

- 10 -

33. He asks this Court to re-find facts, re-weigh evidence, and/or re-assess credibility to suit his view of the evidence. This we cannot do. Under the aforementioned standard of review applicable in custody matters, the trial court's findings are not disturbed absent an abuse of discretion. *See E.R.*, 129 A.3d at 527. Upon review, we find no error of law or abuse of discretion. As we stated in *King v. King*:

> It is not this Court's function to determine whether the trial court reached the "right" decision; rather, we must consider whether, "based on the evidence presented, given due deference to the trial court's weight and credibility determinations," the trial court erred or abused its discretion. . . .

889 A.2d 630, 632 (Pa.Super. 2005) (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa.Super. 2005)).

In the case at bar, the trial court carefully analyzed and addressed each factor under Section 5328(a)[9] in considering Child's best interests. Trial Op. at 4-11. Of particular significance to the trial court were education, medical care, especially as it relates to allergy treatment and medication,

_(Footnote Continued)_ _____

the fact-finder, in this case the trial court, is to assess all aspects of a witness's testimony, including impeachment, and decide what is true and what is false.

[9] The trial court failed to address factor 2.1. However, we do not find this fatal given its closeness to factor 2 and because there was no evidence relevant to factor 2.1 in the record. We note that the court addressed each of the other factors in detail.

and the child's sibling relationship with her younger half-sister through Mother. *Id.* As the court summarized:

> We found for both parties, or for neither party, in eight of the sixteen factors. We found for Mother in four of the factors and for Father in the other three. When all of the factors were considered together, no combination of factors weighed more favorably for one party over the other. However, it was clear to this Court that Mother is more invested in [Child] and particularly concerned for her educational opportunities. [Child] is safe in either household, with both significant others in these homes. Therefore, as we stated in our opinion, we gave great weight to the fact that [Child] has a sister in Mother's home.

1925(a) Op. at 5. Hence, after review of the record, we determine the trial court's findings regarding the custody factors set forth under Section 5328(a) and determinations regarding best interests are supported by competent evidence in the record, and we will not disturb them. *See E.R.*, 129 A.3d at 527.

Finally, we address Father's third issue, in which he asserts that the trial court erred in admitting certain evidence, including hearsay, and in excluding other evidence. Father's Br. at 17-20. Specifically, Father argues that the court admitted evidence in the nature of settlement negotiations in relation to Child attending pre-K. *Id.* at 17-18. Father references testimony of Mother as to the custodial arrangement she proposed for Child to attend pre-K. *Id.* Likewise, Father contends that the court improperly admitted an

email from Father to Mother, also related to settlement, that was not exchanged by counsel as an exhibit prior to trial.[10]  *Id.* at 18-19.  In addition, Father maintains that the court prevented him from presenting certain evidence, including witnesses.  Father references text messages allegedly establishing that Mother changed the date on a text message, as well as the testimony of a former employer of Mother's fiancé[11] as to current investigation of criminal activity.[12]  *Id.* at 19-20.  We disagree.

"Our standard of review relative to the admission of evidence is for an abuse of discretion."  *Commonwealth v. Wantz*, 84 A.3d 324, 336 (Pa.Super. 2014); *see also In re Adoption of R.K.Y.*, 72 A.3d 669, 675 (Pa.Super. 2013).  As we explained:

> These matters are within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law.  An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.  In addition, [t]o constitute reversible error, an

---

[10] Father did not object to this email as hearsay or as inadmissible evidence of settlement negotiations, but rather on the basis that it was not exchanged as an exhibit prior to trial.  N.T., 2/16/17, at 157-58.

[11] While Father refers to this witness as Mother's fiancé's employer, in the record this witness is referred to as a partner of Mother's fiancé as well as a co-worker of Mother and her fiancé.  *Id.* at 53-55, 105-106, 180.

[12] Father acknowledges that the text messages in question were in fact admitted, but takes issue with the weight given this evidence by the court.  Father's Br. at 19.

evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Jacobs v. Chatwani*, 922 A.2d 950, 960 (Pa.Super.) (quoting *Freed v. Geisinger Med. Ctr.*, 910 A.2d 68, 72 (Pa.Super. 2006)), *appeal denied*, 938 A.2d 1053 (Pa. 2007). An error will be deemed harmless if:

> (1) the error did not prejudice the defendant or the prejudice was *de minimus*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence . . . was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Markman*, 916 A.2d 586, 603 (Pa. 2007) (quoting *Commonwealth v. Young*, 748 A.2d 166, 193 (Pa. 1999)).

Father first challenges the admission of testimony and an email regarding prior custody discussions between the parties. Father claims that at trial he "objected to settlement negotiations," but in his brief he discusses only general hearsay law. Because Father failed to clearly state the basis for his objection at trial, and because he does not develop any substantive argument in his brief concerning the improper admission of "settlement negotiations," we conclude Father was waived this claim. *See* Pa.R.Evid. 103 (party preserves claim regarding exclusion of evidence only if party timely objects and states specific grounds, "unless it was apparent from the context"). Further, even if he had not waived the claim, we would conclude the trial court did not err.

Pennsylvania Rule of Evidence 408 provides:

**Rule 408. Compromise Offers and Negotiations**

**(a) Prohibited Uses.** Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and

> (2) conduct or a statement made during compromise negotiations about the claim.

**(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Pa.R.Evid. 408.   Here, the testimony was not offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction." ***See id.***   Rather, in response to counsel's objection, the trial court stated:  "I'm going to hear it.  I want to know what they talked about and ***what his attitude was***."[13]   N.T., 2/16/17, at 8 (emphasis added).  Further, to the extent the objection was based on hearsay, the trial court did not err in overruling the objection, as it

---

[13] The court discusses Mother's desire for Child to attend pre-K and that Mother offered Father additional custodial time.  Trial Op. at 5. Although Mother did not ultimately offer additional custodial time, Mother confirms this was discussed and that she would have, but for Father's position.  N.T., 2/16/17, at 87.

was not admitted for the truth of the matter asserted. *See* Pa.R.Evid. 801(c).

As to the text messages that Father contends suggest date tampering, we again will not question the trial court's determination as to weight and relevance. *See E.R.*, 129 A.3d at 527. Further, we find no abuse of discretion by the trial court in excluding the testimony of the "former employer," given the lack of evidence of a current, ongoing police investigation of or charges against Mother's fiancé. As the court recognized, "I do not want the former partner here. There are no criminal charges pending. I'm not going to have dirt thrown for no reason[.]" N.T., 2/16/17, at 106.

Accordingly, for the foregoing reasons, we affirm the order of the trial court awarding the parties shared legal custody, Mother primary physical custody, and Father partial physical custody.

Order affirmed.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/24/2017

- 16 -