J-A23025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| M.Y., | | : | IN THE SUPERIOR COURT OF |
| | | : | PENNSYLVANIA |
| | Appellee | : | |
| | | : | |
| B.S., | | : | |
| | | : | |
| | Appellant | : | |
| | | : | |
| | | : | No. 774 WDA 2018 |

Appeal from the Order April 26, 2018
In the Court of Common Pleas of Butler County Domestic Relations at
No(s): 17-90269-C

BEFORE: BOWES, J., SHOGAN, J., and STABILE, J.

MEMORANDUM BY BOWES, J.: **FILED APRIL 9, 2019**

B.S. appeals from the April 26, 2018 custody order that effectively awarded M.Y. ("Mother") primary physical custody of their minor daughter, A.S. We affirm.

A.S. was born out of wedlock during January 2011. For the first three years of her life, A.S. resided with Mother, Father, and the paternal grandmother in Pleasant Hills, Pennsylvania, a municipality located in the South Hills region of Allegheny County. Thereafter Mother, Father, and A.S. moved to Cranberry Township, Butler County, Pennsylvania, a northern suburb of Pittsburgh. The move was occasioned by Father's need to live closer to his place of employment because his driving privileges were suspended as a consequence of a DUI conviction. The family remained intact until July 2016, when Mother returned to the South Hills to live with her parents in West Jefferson Hills. A.S. remained in Cranberry Township with Father who

exercised primary physical custody pursuant to the parties' informal, oral agreement.

On May 3, 2017, Mother filed a complaint for custody seeking primary physical custody of A.S. Father responded with a counterclaim seeking primary physical custody. The trial court identified the focus of the custody dispute as follows:

> The difficulty in this case arises from the fact that Father lives in Cranberry Township, Butler County, Pa[.] and Mother lives in the South Hills of Pittsburgh which prevents an equal shared custody arrangement due to the child being in school. Mother wishes to have the child in her primary physical custody and attend school in the West Jefferson Hills School District and to share weekends, summer and holidays with Father. Father wishes to maintain primary physical custody and remain in the Seneca Valley School District as his employment is there and he has transportation issues. It is contemplated that Father will regain his driver's license soon and the transportation issues will no longer be a problem for him to get to work.

Trial Court Opinion, 4/26/18, at unnumbered 1-2.

The trial court directed Mother and Father to undergo custody evaluations with Bruce Chambers, Ph.D., who prepared a custody evaluation report and presented his expert testimony during the ensuing custody hearing. Specifically, he testified that the ideal custody arrangement in this case would be to award equally-shared physical custody because both parents are capable, competent parents who "clearly love the child." N.T., 3/1/18, at 6, 9, 11, 13. Nevertheless, Dr. Chambers determined that the primary concern in this case was avoiding a disruption in A.S.'s elementary school routine, and he concluded that maintaining continuity warranted granting

Father primary physical custody in Butler County during the academic year. *Id*. at 11, 14. Significantly, Dr. Chambers did not proffer any other reason for his conclusion, and on cross-examination, he indicated that he was not entirely aware that the paternal grandmother, who cares for A.S. while Father is at work, lived near Mother in the South Hills region of Allegheny County. *Id*. at 12-13. Likewise, as it relates to his concern about continuity, Dr. Chambers conceded that children are typically resilient, that A.S. was "pretty-well adjusted," and that she "probably" could adjust to a change of elementary school. *Id*. at 13-14.

Following the evidentiary hearing, the trial court entered a custody order that granted Mother and Father shared legal custody and awarded Mother primary physical custody of A.S. in West Jefferson Hills unless Father resides within thirty minutes of McLellan Elementary School, the school that A.S. will attend while living at Mother's residence in the South Hills. However, if Father moved within the designated area, the parties would exercise equal periods of physical custody. *See* Trial Court Order, 4/26/18, at unnumbered 1-2. As Father has not expressed an intention to relocate from Cranberry Township, the order effectively awarded Mother primary physical custody.

Father filed a timely appeal and complied with Pa.R.A.P. 1925(b). He presents three issues for our review, which we renumbered for ease of disposition:

> I. Whether the trial court erred and abused its discretion by failing to consider Father's move to a larger residence.

- 3 -

II. Whether the trial court erred and abused its discretion by requiring [A.S.] to move from [Cranberry Township] to Allegheny County.

III. Whether the trial court erred and abused its discretion by disregarding the reccomendation [sic] of the court appointed psychologist[,] Dr. Chambers.

Father's brief at 4.

In *M.J.M. v. M.L.G.*, 63 A.3d 331 (Pa.Super. 2013), we reiterated the applicable scope and standard of review as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.
>
> *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super. 2011) (citation omitted).

*M.J.M.*, *supra* at 334.

Pursuant to 23 Pa.C.S. § 5328(a), the determination of a child's best interests requires the examination of the following factors:

- 4 -

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's

effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328 (a)(1)-(16).

Herein, the trial court considered the enumerated custody factors and determined that all but four of the custody factors either balanced between Mother and Father equally or were inapplicable. Trial Court Opinion, 4/26/18, at unnumbered 2-5. Three of the remaining factors: the availability of extended family, the proximity of the parties' residences, and each party's availability to make child care arrangements militated strongly in favor of Mother exercising physical custody in West Jefferson Hills.[1] *Id*. at unnumbered 3-4. In sum, the court identified the availability of A.S.'s relatives from both sides of her extended family near Mother's residence as

> the tipping factor in granting Mothers request for partial physical custody in Allegheny County. Father and Mother were both raised in the area where Mother currently resides with her parents; to wit; the Jefferson Hills area, of Allegheny County. Father's mother, [P.S.], lives in the Jefferson Hills area near Mother's family and travels to Cranberry Township Monday through Friday staying with her son and granddaughter and, in fact, sleeping in a trundle bed in granddaughter's room. Both Mother and Father

---

[1] The trial court recognized a fourth factor, relating to Father's history of alcohol abuse, that it found would weigh in Mother's favor if Father were to relapse. Trial Court Opinion, 4/26/18, at unnumbered 5.

have extended family in the South Hills/Jefferson Hills area of Allegheny County that it would be in the child's best interest to be near.

Trial Court Opinion, 4/26/18, at unnumbered 3.

The court reasoned that the proximity of the child's extended family to Mother "weigh[ed] heavily in favor of the child residing in that area." *Id*. at 4. Thereafter, it highlighted Father's testimony regarding his ability to change residences after his current lease expired in August 2018 and his flexibility in moving closer to the child "[i]f he had to," although he currently had no intention of moving to the South Hills. N.T., 3/1/18, at 95, 98-99. Ultimately, the court determined that "[t]he benefits to the child to be near her extended family far outweigh [the] inconvenience" of Father's reluctance to move closer to his daughter in order to facilitate a shared custody schedule. Trial Court Opinion, 4/26/18, at unnumbered 4.

Appellant's first contention is that the trial court erred in rendering its best interests analysis by failing to consider Father's contemplated move to a larger residence. The crux of this complaint is that the trial court's reference to the fact that the paternal grandmother sleeps on a trundle bed in A.S.'s room when she cares for the child at Father's home discounted Father's testimony that he intended to purchase a home in Cranberry when his lease expired. Father's brief at 11. Essentially, he opines that purchasing a new home would alleviate the trial court's concern about the sleeping arrangements.

Father's claim fails. The trial court did not evaluate the quality or size of Father's residence in rendering its decision. Indeed, the court's reference to the fact that paternal grandmother slept on a trundle bed while caring for A.S. denotes the burden of paternal grandmother's trek from her home in the South Hills to Cranberry Township in order to care for A.S. for the week while Father is at work. Stated plainly, the size of Father's home, whether leased or owned, was not an aspect of the trial court's best-interests analysis.

Next, we consider Father's assertion that the trial court erred or abused its discretion in neglecting to include in its best-interests analysis a delineated consideration of the relocation factors outlined in 23 Pa.C.S. § 5773(h).[2]

---

[2] Section 5337(h) of the Child Custody Law enumerates ten factors a court must consider in determining whether to grant a proposed relocation:

(h) Relocation factors.—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

Appellant argues that the § 5773(h) analysis was necessary because the court's decision to grant Mother's request for primary physical custody required A.S. to move a significant distance. **See** Father's brief at 7.

In **D.K. v. S.P.K.**, 102 A.3d 467 (Pa.Super. 2014), this Court was asked to confront whether a mother was required to comply with the procedural aspects of § 5337(h) when she filed a custody complaint in Pennsylvania after previously moving to North Carolina while her children remained in Pittsburgh,

_____

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

Pennsylvania, with their father. The parties had entered into a custody agreement permitting the father to maintain primary physical custody of the children in Pennsylvania, and providing the mother with periods of supervised custody in North Carolina. Approximately one year after entering into this agreement, the mother filed a complaint for custody seeking primary physical custody. The trial court subsequently awarded primary physical custody to the mother, and the father appealed.

On appeal, the father argued, *inter alia*, that the mother failed to comply with the relocation procedures delineated in § 5337. He contended that since the children would be relocated to North Carolina, the mother was required to provide him timely notice of her intention to relocate the children. We rejected that contention, finding that § 5337 anticipates that a custodial parent would be relocating and that "where neither parent is relocating, and only the custodial rights of the parties are at issue, section 5337 of the Child Custody Act is not *per se* triggered." **Id**. at 474. Accordingly, we held that the relocation provisions under § 5337 did not apply and, therefore, the mother was not required to comply with the section's notice mandate. **Id**. at 472.

In *dicta*, we continued that, in a case where a child stands to move a significant distance as a result of a custody determination, the trial court should consider the relevant factors of § 5337(h) in its § 5328(a) best interests analysis. **Id**. at 476. Thereafter, this Court identified the correlation between seven of the relevant relocation factors and the attendant § 5328(a)

best interests factors.[3] *Id*. at 477. In summary, we reasoned, "As we have explained, several of the relevant factors of section 5337(h) are encompassed, directly or implicitly, by the custody factors listed in section 5328(a). Any relevant section 5337(h) factor that is not expressly encompassed in section 5328(a) should be considered by the trial court under the catchall provision of section 5328(a)(16)." *Id*. at 478.

Accordingly, as the *D.K.* Court highlighted, the best-interests factors outlined in § 5328(a) subsume **all** of the relocation considerations that are relevant in this situation, where neither party is relocating but the determination of physical custody will require the child to move a significant distance. Therefore, the trial court's custody analysis complies with the *D.K.* Court's recommended best practice in these situations. In reaching its conclusion that it would serve the best interests of A.S. to reside in Mother's physical custody in West Jefferson Hills, the trial court considered the relevant custody factors and concluded that the factors regarding the proximity of the residences, availability of childcare, and the presence of the child's extended

_____

[3] Specifically, this Court observed that § 5328(a)(2), (a)(3), (a)(5), (a)(6), (a)(7), and (a)(8) subsume the correlating factors in § 5337(h)(9), (h)(1), (h)(4), and (h)(5). *D.K. v. S.P.K.*, 102 A.3d 467, 477 (Pa.Super. 2014). We determined that the catchall provision in § 5328(a)(16) implicates relocation factors (h)(2), (h)(3), and (h)(7), respectively. *Id*. While the *D.K.* court did not specifically address the two remaining relocation factors that do not have correlating best-interests factors under § 5328(a), *i.e.*, § 5337(h)(6) and (h)(8), we observe that those two considerations relate to the parties to the dispute rather than the best interests of the child. Thus, where, as here, a custodial parent is not relocating, those factors are irrelevant to the determination of physical custody.

family in that area, including the paternal grandmother who cares for the child while Father is at work, were the "tipping factor in granting Mother's request for . . . physical custody in Allegheny County." Trial Court Opinion, 4/26/18, at unnumbered 3.

Significantly, as it relates to Father's assertion that the trial court overlooked the enumerated relocation factors under § 5337(h), we highlight that the trial court's analysis of § 5328(a)(3) and (a)(5), and to lesser degree (a)(11) and (a)(12), impacted the § 5337(h)(1) relocation consideration directly and its review of the corresponding custody factors revealed that the relocation factors in § 5337(h)(4), (h)(5), and (h)(9) were not implicated in this case.

Moreover, while the trial court did not provide additional analysis under the catchall provision of § 5328(a)(16), its attention to the benefits that will inure to A.S. by living in close proximity to her extended family in southern Allegheny County, including the individual who is her primary childcare provider when in Father's custody, implicated relocation factors (h)(2), (h)(3), and (h)(7), which address, *inter alia*, the child's emotional development, logistics of preserving the relationship with the non-custodial parent, and the enhancement to the child's quality of life. Thus, for all of the foregoing reasons, a remand for further review of the specific relocation factors outlined in § 5337(h) is neither required by our holding in ***D.K.*** nor necessary to ensure that the trial court performed a thorough best interests analysis.

Finally, we confront Father's contention that the trial court erred in failing to consider Dr. Chambers's custody recommendation. Father asserts that the trial court simply disregarded Dr. Chambers's expert opinion that A.S. should remain with Father in Cranberry Township, in order to maintain stability and continuity in her education. For the following reasons, no relief is due.

Initially, as it relates to the trial court's consideration of Dr. Chambers's expert testimony, we observe that, while a trial court may not totally discount as unpersuasive an uncontracted expert opinion, as the ultimate arbiter of fact in custody cases, the trial court is not required to accept the expert's conclusions when the certified record sustains its independent determination to the contrary. *See Nomland v. Nomland*, 813 A.2d 850, 854 (Pa.Super. 2002) ("So long as the trial court's conclusions are founded in the record, the lower court was not obligated to accept the conclusions of the experts."); *Murphey v. Hatala*, 504 A.2d 917, 922 (Pa.Super. 1986) ("[T]he trier of fact is not bound by the testimony of any expert witness and is under no obligation to accept the conclusions of an expert witness.").

Moreover, the certified record belies Father's assertion that the trial court ignored the expert's concerns. The trial court opinion filed contemporaneously with the custody order awarding Mother primary physical custody specifically acknowledged Dr. Chambers's focus on the importance of maintaining continuity in A.S.'s elementary education. *See* Trial Court Opinion, 4/26/18, at unnumbered 2 (quoting Dr. Chambers's report). Indeed, in contrast to Father's contention that the trial court ignored Dr. Chambers's

expert conclusion, the certified record bears out that the trial court did, in fact, consider the expert's recommendation, but as we outline *supra* on pages six and seven of this memorandum, it reached a different conclusion based upon the other competent evidence of record. Specifically, the court reasoned that while it is preferable for Mother and Father to exercise shared physical custody, if that situation is not possible, it serves the best interests of A.S. to be near her extended family in the South Hills region of Allegheny County.

As the certified record supports the trial court's assessment of the relevant custody factors pursuant to § 5328(a), and its decision to award Mother primary physical custody of A.S. if Father declines to move closer to West Jefferson Hills, we do not disturb it.

Order affirmed.

Judge Stabile joins the memorandum.

Judge Shogan files a dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/9/2019

- 14 -