J-A29024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: THE ESTATE OF RICHARD BREZENSKI, AN INCAPACITATED PERSON | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: RICHARD BREZENSKI | : : : : : | |
| | : | No. 1187 WDA 2020 |

Appeal from the Order Entered October 5, 2020
In the Court of Common Pleas of Washington County Orphans' Court at
No(s):  63-20-0395

BEFORE:  BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.*

MEMORANDUM BY BOWES, J.:                    **FILED:  January 13, 2022**

Richard Brezenski appeals from the October 5, 2020 order that decreed him an incapacitated person and appointed a plenary guardian of his person and estate.  We affirm.

This action was initiated when Mr. Brezenski's wife, Sandra Brezenski, filed a petition for adjudication of incapacity and appointment of guardian pursuant to 20 Pa.C.S. § 5511.  The orphans' court held several days of hearings on the petition.  In addition to her own testimony, Mrs. Brezenski presented the testimony of Mark Mamros, M.D., Mr. Brezenski's primary care physician, and Evgeniy Shchelchkov, M.D., a neurologist who treated Mr. Brezenski.  At the second hearing, Mr. Brezenski presented the testimony of Richard Ajayi, M.D., a psychiatrist who treated Mr. Brezenski, and Eric Weisman, M.D., a neurologist who examined Mr. Brezenski.  At the third

_____
* Retired Senior Judge assigned to the Superior Court.

hearing, Mrs. Brezenski presented rebuttal testimony from Dr. Mamros and Connie McCord, Mr. and Mrs. Brezenski's daughter. At the fourth hearing, Mr. Brezenski testified. During the pendency of the hearings, the orphans' court ordered Mrs. McCord appointed as an emergency guardian for Mr. Brezenski.

Mrs. Brezenski testified that at the time of the hearing, she had been married to Mr. Brezenski for almost fifty years. N.T., 6/1/20, at 82. In 2018, Mr. Brezenski became forgetful, hostile, and demeaning, and he lost interest in his tinkering hobbies. *Id*. at 82-85. After being in the hospital in March 2019, he grew disoriented, angrier, and more aggressive. *Id*. at 87-88. He twice asked Mrs. Brezenski to bring him a gun to shoot the nurses and security guards at the hospital, and thereafter requested a gun to shoot the nurses at the nursing facility where he was moved. *Id*. at 88-89, 92. He also asked the nurses to go into the shower with him and flirted inappropriately with one of the nurses. *Id*. at 89-90.

Once Mr. Brezenski returned home, he remained forgetful, made inappropriate sexual comments towards Mrs. Brezenski, had to be reminded to shower and change his clothes, lost interest in things he had done before, would discard many of his medications instead of taking them, and began to search online for child pornography. *Id*. at 99-104. In early 2020, he choked Mrs. Brezenski. *Id*. at 106. Thereafter, in February 2020, he assaulted Mrs. Brezenski to prevent her from leaving the home with their joint checking account checkbook, chased her to her car, pounded his fist on the vehicle, and threatened to kill Mrs. Brezenski and her cat. The next day, Mrs. Brezenski

returned to the house with Mrs. McCord to get some personal items and her cat. As they were returning to their car, Mr. Brezenski arrived and blocked them in the driveway with his vehicle. After Mrs. Brezenski called the police, he moved his vehicle and she returned to Mrs. McCord's house. Shortly thereafter, Mr. Brezenski attempted to enter Mrs. McCord's house, threatened to kill them, and brandished what Mrs. Brezenski believed was a gun. Again, she called the police, who ultimately arrested Mr. Brezenski. *Id*. at 107-15. Mrs. Brezenski explained that she filed the petition for adjudication of incapacity in order to get her husband the help he needs and to transfer him to a memory care facility. *Id*. at 123-24.

Dr. Mamros testified as an expert, as well as Mr. Brezenski's primary care physician for the at least the past twenty-five years. *Id*. at 22. In Dr. Mamros's opinion, sometime within the prior two years, Mr. Brezenski was no longer able to make his own decisions and handle his own affairs as a result of suffering from frontal temporal lobe dementia, as well as several episodes of acute metabolic encephalopathy. *Id*. at 23, 25. As explained by Dr. Mamros, frontal temporal lobe dementia is a permanent, regressive disease with a slow progression involving "impulsivity and . . . a lack of judgment[.]" *Id*. at 23-24, 26, 40. During that time, Mr. Brezenski's normal baseline personality became very different: his language became hypersexual towards the hospital staff and, after suffering an episode of acute metabolic encephalopathy, his hypersexuality continued and he also became angry and paranoid. *Id*. at 25-26. As part of his paranoia, he had "typical delusions" of

his wife and daughter plotting against him and his wife cheating on him. *Id*. at 26. Based upon this diagnosis, Dr. Mamros believed that Mr. Brezenski required "some level of care where he can be assisted in [the] instrumental activities of daily living, [*i.e.*] . . . making sure he gets his medication, . . . help him with finances and shopping." *Id*. at 28.

Dr. Shchelchkov testified that he saw Mr. Brezenski five times. *Id*. at 57. Over the course of those visits, Dr. Shchelchkov came to the conclusion that Mr. Brezenski "probably suffer[ed] from early Alzheimer's disease." *Id*. at 59. Based upon Mr. Brezenski's behavioral issues and signs of mental status regression, Dr. Shchelchkov recommended that Dr. Mamros implement specific medications for the treatment of dementia and advised Mrs. Brezenski to confiscate his firearms. *Id*. at 62, 69. Unfortunately, because of other medical conditions, Dr. Shchelchkov was unable to evaluate whether Mr. Brezenski suffered from frontal temporal lobe dementia or another form of dementia. *Id*. at 63-65. Dr. Shchelchkov ultimately referred Mr. Brezenski to the Memory Clinic in the hope of identifying Mr. Brezenski's exact diagnosis. *Id*. at 71. Nonetheless, based on his evaluations, his "working diagnosis [wa]s . . . early onset dementia with behavioral problems." *Id*. at 73.

Dr. Ajayi testified as an expert, as well as a treating psychiatrist. Mr. Brezenski became a patient in his practice in February 2020, and Dr. Ajayi saw him five times between February and July 2020. N.T., 7/10/20, at 4-5, 7, 18-21. In his opinion, Mr. Brezenski does not have dementia, Alzheimer's, or diminished cognitive function, and he discontinued one of Mr. Brezenski's

medications. *Id*. at 15-16. In rebuttal, Dr. Mamros clarified that Dr. Ajayi relayed to him that he could not make an accurate assessment based solely on behaviors he observed on a "good day" during "the few minutes he got to spend with [Mr. Brezenski] during his evaluation." N.T., 7/24/20, at 7-9.

Dr. Weisman testified via telephone as an expert, as well as an examining neurologist. Dr. Shchelchkov referred Mr. Brezenski to Dr. Weisman to determine from what type of dementia Mr. Brezenski was suffering. N.T., 7/10/20, at 57. He conducted a single neurological examination of Mr. Brezenski on June 18, 2020, and later reviewed some of Mr. Brezenski's medical records. *Id*. at 54, 58, 65, 71-72. Based upon his examination and accompanying assessments, he concluded that Mr. Brezenski was not cognitively impaired. *Id*. at 61. As with Dr. Ajayi, he recommended removing some of Mr. Brezenski's current medications, including dextroamphetamine, which he referred to as "speed" and he blamed for Mr. Brezenski's homicidal and suicidal ideations. *Id*. at 63, 93. In the midst of cross-examination, Dr. Weisman abruptly terminated the telephone call and did not answer when the court attempted to call him. *Id*. at 98, 100-01.

In rebuttal, Dr. Mamros testified that Dr. Weisman's "one-time visit" did not change Dr. Mamros's opinion as to Mr. Brezenski's incapacity because it was only a "snapshot" with "his whole source of information [coming from] Mr. Brezenski himself." N.T., 7/24/20, at 12. He also disagreed with Dr. Weisman's conclusion that Mr. Brezenski's dextroamphetamine prescription, or Adderall, caused any violent behavior as he has been continuously taking

that medication to treat narcolepsy for over thirty years and therefore it could not be an explanation for a change in behavior.  *Id*. at 32-36.

Mrs. McCord testified as to her efforts to address Mr. Brezenski's financial and health affairs since being appointed as his emergency guardian. N.T., 7/24/20, at 40-77.  She also testified to threats that Mr. Brezenski made against his own life and that of her family in response to her attempts to carry out her emergency guardianship duties.  *Id*. at 75-76.

Finally, Mr. Brezenski testified to his ability to manage his own financial and health affairs, as well as to his own version of some of the abovementioned events.  N.T., 8/13/20, at 4-80.

After the hearings, the orphans' court took the matter under advisement.  The orphans' court ultimately did not find the testimony of either Dr. Ajayi nor Dr. Weisman to be persuasive or credible.  Orphans' Court Opinion, 5/28/21, at 5.  By order filed October 5, 2020, the court found clear and convincing evidence that Mr. Brezenski suffers from frontal temporal lobe dementia and is incapable of caring for himself and making decisions regarding his daily living activities and affairs.  Order, 10/5/20, at 1-2.  Therefore, the court appointed Mrs. McCord as plenary guardian of Mr. Brezenski's person and estate.

This timely appeal followed.  Both Mr. Brezenski and the orphans' court have complied with Pa.R.A.P. 1925.  On appeal, Mr. Brezenski raises the following issues:

1. Whether the trial court abused its discretion and committed an error of law in determining that Appellant is incapacitated and that a guardian must be appointed.

2. Whether the trial court abused its discretion by failing to consider the expert witness testimony presented by Appellant and the testimony of the Appellant that he was able to evaluate information effectively and communicate decisions in any way so as to be able to manage his financial resources and meet the essential requirements for his physical health and safety.

3. Whether the trial court abused its discretion and committed an error of law in finding that Appellant suffered from a mental illness or condition requiring the appointment of a guardian.

Mr. Brezenski's brief at 3 (unnecessary capitalization omitted).

Mr. Brezenski's claims challenge the orphans' court's finding of incapacity and subsequent appointment of a guardian.

The appointment of a guardian lies within the discretion of the trial court and will be overturned only upon an abuse of discretion. Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

*In re Duran*, 769 A.2d 497, 506 (Pa.Super. 2001) (cleaned up).

Our legislature has provided that, upon clear and convincing evidence of incapacity, an orphans' court may appoint a guardian of the person and/or estate. *See* 20 Pa.C.S. § 5511(a). An incapacitated person is "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. § 5501.

- 7 -

The legislature has enumerated the following specific considerations and findings necessary to the resolution of a guardianship petition by an orphans' court:

**(a) Determination of incapacity.**--In all cases, the court shall consider and make specific findings of fact concerning:

(1) The nature of any condition or disability which impairs the individual's capacity to make and communicate decisions.

(2) The extent of the individual's capacity to make and communicate decisions.

(3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions and in light of the existence, if any, of advance directives such as durable powers of attorney or trusts.

(4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.

(5) The duration of the guardianship.

(6) The court shall prefer limited guardianship.

. . . .

**(c) Plenary guardian of the person.**--The court may appoint a plenary guardian of the person only upon a finding that the person is totally incapacitated and in need of plenary guardianship services.

. . . .

**(e) Plenary guardian of the estate.**--A court may appoint a plenary guardian of the estate only upon a finding that the person is totally incapacitated and in need of plenary guardianship services.

20 Pa.C.S. § 5512.1.

After reviewing the certified record and the parties' briefs, we discern no error or abuse of discretion on the part of the orphans' court as to the issues raised by Mr. Brezenski. Specifically, the orphans' court noted that: (1) the court found Mr. Brezenski was suffering from a decline in his mental health that rendered him incapacitated based on the testimony of Dr. Mamros, Dr. Shchelchkov, and Mrs. Brezenski; (2) the court reviewed all the evidence and transcripts of the proceedings, considered the testimony of all the experts and Mr. Brezenski, and, as the fact-finder, concluded that "Dr. Mamros and Shchelchkov provided significant testimony that Mr. Brezenski was suffering from frontal lobe dementia and early onset Alzheimer's and that he was incapacitated, necessitating the appointment of a guardian[,]" Dr. Mamros was the most familiar with Mr. Brezenski and was unequivocal in his medical opinion, and Dr. Ajayi's testimony, Dr. Weisman's testimony, and Mr. Brezenski's testimony were not persuasive or sufficient to overcome the expert findings of Dr. Mamros and Dr. Shchelchkov;[1] and (3) the court found

_____

[1] Specifically, the orphans' court found Dr. Ajayi's opinion that Mr. Brezenski was not suffering from dementia "was discredited when he admitted that Mr. Brezenski's paranoia regarding his family could be related to a disease process such as dementia" and he was unaware of Mr. Brezenski's suicidal and homicidal ideations and behavioral changes, and therefore could not opine on whether those behaviors were related to dementia. Orphans' Court Opinion, 5/28/21, at 11. Likewise, the court found Dr. Weisman's opinion that Mr. Brezenski was not suffering from dementia was discredited for multiple reasons, including failing to conduct a complete assessment or review all information necessary to complete an accurate assessment, accepting as fact

that Mr. Brezenski's third allegation was nearly identical to his first, and that based upon the testimony of Dr. Mamros and Dr. Shchelchkov, Mr. Brezenski was incapacitated and in need of a guardian. **See** Orphans' Court Opinion, 5/28/21, at 9-16. Accordingly, we affirm the order on the basis of the cogent and well-reasoned opinion that Honorable John F. DiSalle entered on May 28, 2021.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/13/2022

---

Mr. Brezenski's medical statements but failing to investigate the claims regarding his personality and disregarding them in his evaluation, failing to notice Mr. Brezenski was suffering from cellulitis to the degree that he was hospitalized immediately after the appointment, despite conducting a general examination and being with Mr. Brezenski for over an hour, and "act[ing] in an unprofessional manner during his telephone testimony[.]" **Id**. at 11-13.

Chris
Blackwell

IN THE COURT OF COMMON PLEAS

OF WASHINGTON COUNTY PENNSYLVANIA

ORPHANS' COURT DIVISION

IN RE:

THE ESTATE OF RICHARD BREZENSKI,

AN INCAPACITATED PERSON

No. 63-20-395/ 1187 WDA 2020

## Opinion

This matter comes before the Superior Court upon the direct appeal[1] from the order, dated October 2, 2020, by which the court found Richard Brezenski to be suffering from Frontal Temporal Lobe Dementia resulting in impairment to his physical and mental abilities requiring the appointment of a plenary guardian of his person and estate.

On October 30, 2020, Christopher Blackwell, Esquire, acting on behalf of Richard Brezenski (hereinafter "Mr. Brezenski"), filed a timely notice of appeal from the order of October 2, 2020 declaring Mr. Brezenski to be incapacitated and appointing his daughter, Connie McCord (hereinafter "Ms. McCord") as the guardian of his estate and person.

### Case Background

On March 24, 2020, David Finder, Esquire, acting on behalf of Sandra Brezenski (hereinafter the "Petitioner"), filed a petition to adjudicate her husband, Mr. Brezenski, an incapacitated person and to have a guardian appointed for his person and estate. On March 18, 2020, the trial court issued a rule to show cause to Mr. Brezenski by which he was directed to show cause why a guardian should not be appointed and scheduled a hearing. On June 1, 2020,

---

[1] Case no. C-63-OC-2020-395 is docketed at No. 1187 WDA 2020.

1

D

the court held the first of several days of testimony regarding the allegations of Mr. Brezenski's incapacity.

On the first day of trial, Corey Young, Esquire, acting as counsel for the Petitioner, called Dr. Mark Mamros to testify, who was Mr. Brezenski's primary care physician. Dr. Mamros testified that Mr. Brezenski lacked the mental capacity necessary to evaluate information and make decisions and handle his own affairs as a result of his Frontal Temporal Lobe Dementia and several episodes of acute metabolic encephalopathy.[2] Dr. Mamros described Frontal Temporal Lobe Dementia as a condition of the brain, which affects personality and decision-making causing a person to exhibit bizarre behavior and personality changes.[3] Dr. Mamros, who had been acting as Mr. Brezenski's primary care physician for at least thirty years prior to the proceeding, believed that Mr. Brezenski had begun suffering from Frontal Temporal Lobe Dementia within the last two years.[4] Dr. Mamros testified that within the last two years, he witnessed a marked change in Mr. Brezenski's behavior, particularly his lack of inhibition. Specifically, he was becoming hypersexual and making inappropriate comments to hospital staff.[5] In March of 2019, Mr. Brezenski was diagnosed with congestive heart failure following a pacemaker procedure, which ultimately resulted in him suffering from metabolic encephalopathy.[6] Upon recovery, Mr. Brezenski's personality had drastically changed to the point that he became very angry and very paranoid.[7] Mr. Brezenski began to have delusions that

---

[2] Guardianship Hearing Transcript, pg. 23 (June 1, 2020).
[3] *Id.* at 24.
[4] *Id.* at 24-25.
[5] *Id.* at 25.
[6] *Id.* at 25. Dr. Mamros described metabolic encephalopathy as a condition where the brain is not working as well as it used to be due to the underlying processes of dementia. Further, physical stress, such as heart failure, will cause the brain to misfire leading to confusion and disorientation. *Id.* at 27.
[7] Guardianship Hearing Transcript at 25-26.

2

the Petitioner was cheating on him and that she and his daughter were plotting against him.[8] Dr. Mamros further testified that Mr. Brezenski's Frontal Temporal Lobe Dementia is a progressive disease that is permanent and irreversible.[9]

Dr. Mamros opined that Mr. Brezenski needed a guardian and would be an appropriate candidate for a custodial care setting such as a nursing home or assisted living facility.[10] Dr. Mamros further testified that Mr. Brezenski is currently taking a dementia medication known as Memantine, which helps assist the brain to function better,[11] and is prescribed anti-depression medication, Sertraline, and Quetiapine for agitation and restlessness.[12] Dr. Mamros ultimately opined that Mr. Brezenski suffers from a regressive neurological disorder, which will not improve, and there is no medication that can rehabilitate or restore his mental capabilities.[13]

Following Dr. Mamros, Dr. Evgeniy Shchelchkov was called to testify as an expert including board certifications in neurology and psychiatry. Dr. Shchelchkov first met with Mr. Brezenski on March 15, 2019 for a consultation. He subsequently met with Mr. Brezenski on April 24, 2019, July 19, 2019, February 13, 2020, and March 4, 2020.[14] Based on his examinations of Mr. Brezenski, Dr. Shchelchkov concluded that Mr. Brezenski is suffering from the early stages of Alzheimer's disease.[15] In February of 2020, Mr. Brezenski was admitted into the hospital at which time an EEG was conducted which found that the normal background activity of Mr. Brezenski's cortex had slowed, possibly as a result of dementia.[16] Dr.

---

[8] *Id.* at 26.
[9] *Id.* at 26.
[10] *Id.* 27-28
[11] *Id.* at 29.
[12] *Id.* at 30.
[13] Guardianship Hearing Transcript at 34.
[14] *Id.* at 57.
[15] *Id.* at 59.
[16] *Id.* at 60.

3

Shchelchkov confirmed that Dr. Mamros contacted him on February 11, 2020 to inform him that Mr. Brezenski was exhibiting signs of mental regression, specifically, behavioral issues such as uncontrollable anger and inappropriate sexual advances.[17] Dr. Shchelchkov recommended to Dr. Mamros that Mr. Brezenski be placed on two dementia treatment medications, Risperdal and Seroquel. However, this did not happen because Mr. Brezenski was subsequently admitted into the hospital for cellulitis, which interrupted the treatment recommendations.[18]

Dr. Shchelchkov again met with Mr. Brezenski on February 13, 2020 to assess his mental capabilities. During this meeting, Dr. Shchelchkov noted that Mr. Brezenski had forward insight into his medical problems, i.e. that he displayed severe engaging problems and dismissed all concerns, and claimed that people were plotting against him.[19] During this assessment, Dr. Shchelchkov noted that Mr. Brezenski represented a danger to himself and others and recommended that the Petitioner confiscate all of his firearms.[20] Dr. Shchelchkov met with Mr. Brezenski again on March 4, 2020, at which time he was again dismissive of his behavioral issues raised by Dr. Mamros.[21] During this assessment, Dr. Shchelchkov performed the Mini-Mental Scale Evaluation to assess Mr. Brezenski's cognitive abilities, specifically, memory. Mr. Brezenski scored 28 out of 30 on the examination, an indication of the early stages of Alzheimer's disease,[22] from which Dr. Shchelchkov diagnosed Mr. Brezenski with early onset dementia with behavioral problems, which he also referred to as early Alzheimer's disease.[23]

---

[17] *Id.* at 62.
[18] *Id.* at 62.
[19] Guardianship Hearing Transcript at 66.
[20] *Id.* at 69.
[21] *Id.* at 65.
[22] *Id.* at 67-69, 59.
[23] *Id.* at 73-74.

4

Counsel for Mr. Brezenski called two experts to testify on his behalf, Dr. Ajayi and Dr. Weisman, to refute the expert testimony offered by Dr. Mamros and Dr. Shchelchkov. As set forth below, the court did not find the testimony of these experts to be persuasive or credible. Dr. Mamros was then called in rebuttal to refute the opinions of Dr. Weisman and Dr. Ajayi.

The Petitioner testified regarding multiple instances of alarming behavior by Mr. Brezenski. In March of 2019, while in the Intensive Care Unit for a thoracotomy, Mr. Brezenski exhibited very aggressive behavior toward the Petitioner and his caregivers. He exhibited suicidal and homicidal ideations and asked the Petitioner for a gun to shoot the nurses and the security guards. He was also sexually inappropriate with the caregivers.[24] After leaving the hospital, Mr. Brezenski was transferred to Premier nursing home to recover. During his time at Premier, Mr. Brezenski again asked the Petitioner for a gun so he could shoot the nurses.[25] He was later placed in McMurray Hills Manor, where Mr. Brezenski continued to have episodes of extreme anger and suicidal ideation.[26]

After Mr. Brezenski returned home from his rehabilitation at McMurray Hills Manor, his personality continued to change. Mr. Brezenski would often make sexually explicit comments to the Petitioner while they were having conversations.[27] Based on comments by Mr. Brezenski, the Petitioner investigated the computer to find that Mr. Brezenski had been making sexually inappropriate searches on the internet including child pornography.[28] Mr. Brezenski also became aggressive and violent with the Petitioner. In January or February of 2020, Mr.

---

[24] *Id.* at 87-89.
[25] Guardianship Hearing Transcript at 92.
[26] *Id.* at 96-97.
[27] *Id.* at 99.
[28] *Id.* at 101-104.

5

Brezenski grabbed the Petitioner by the throat and pushed her up against the wall, choking her to point that she could not breathe.[29] There was another instance where Mr. Brezenski grabbed the Petitioner and slammed her against a door where Mr. Brezenski fell on top of her with his forearm across her neck. The Petitioner made an attempt to leave, but Mr. Brezenski took her checkbook and withheld it from her. The Petitioner retrieved her purse and managed to take the checkbook from Mr. Brezenski at which point Mr. Brezenski threatened to kill her. The Petitioner was able to escape to her vehicle, but Mr. Brezenski followed her and began pounding on the car as she drove out of the driveway.[30]

After escaping the home, the Petitioner went to stay with her daughter, Ms. McCord, and notified the state police of the incident. The next day, the Petitioner and Ms. McCord went to the home while Mr. Brezenski was away to retrieve her personal items and the cat, because Mr. Brezenski had threatened to shoot the cat. As they were preparing to leave, Mr. Brezenski arrived at the home and blocked the driveway with his vehicle. When he refused to move his vehicle the state police were called, but Mr. Brezenski relented and let them leave. Mr. Brezenski then followed them to Ms. McCord's home and tried to force his way into the home, threatening to shoot them and shoot the Petitioner's vehicle. The Petitioner believed that Mr. Brezenski had a gun in his hand while attempting to force his way inside. Mr. Brezenski also threated to destroy an outbuilding on the property and kill the animals inside. Mr. Brezenski was ultimately arrested and charged for this incident.[31]

At the conclusion of the first day of trial, the court ordered that Ms. McCord be

---

[29] *Id.* at 106-107.
[30] *Id.* at 107-110.
[31] Guardianship Hearing Transcript at 110-114.

6

appointed as the emergency guardian of the person and the estate of Mr. Brezenski.[32] On June 23, 2020, the court extended the emergency guardianship to ensure that Mr. Brezenski was adequately cared for while the determination of incapacity was being contested. Trial proceeded on July 10, 2020 and carried over to July 24, 2020. Following the day of trial on July 24, 2020, the emergency guardianship was again extended. On August 13, 2020, the testimony was concluded and the emergency guardianship was extended pending the court's review of the evidence and testimony.[33]

On October 2, 2020, in light of the evidence and testimony presented at trial, the court found that Mr. Brezenski suffered from Frontal Temporal Lobe Dementia, a progressive and irreversible condition, adjudicated Mr. Brezenski as an incapacitated person, and appointed Ms. McCord as the permanent plenary guardian of his person and estate. On October 30, 2020, Attorney Blackwell filed a timely notice of appeal on behalf of Mr. Brezenski. That same day, the court ordered that Mr. Brezenski file his concise statement of matters complained of on appeal. Due to the misplacement of the order by the Washington County Register of Wills, the order was not served until January 8, 2021. Due to circumstances outside of Attorney Blackwell's control, Mr. Brezenski's concise statement was not filed until January 15, 2021, and raised the following issues:

1. The trial court abused its discretion and committed an error of law in determining that Richard Brezenski is incapacitated and that a guardian must be appointed.

---

[32] *Id.* at 163.

[33] During the period of the emergency guardianship, Ms. McCord had two alarming conversations with Mr. Brezenski. During the first call, Ms. McCord was attempting to assist Mr. Brezenski in completing paperwork for the consultation with Dr. Weisman when Mr. Brezenski became upset and threatened to commit suicide. During the second call, Mr. Brezenski threatened to kill Ms. McCord, her husband, and her two children because he discovered his mail was being forwarded to Ms. McCord's address. Guardianship Hearing Transcript, pg. 76 (July 24, 2020).

7

2. The trial court abused its discretion by failing to consider the expert witness testimony and testimony of Appellant, Richard Brezenski, that Richard Brezenski was able to evaluate information effectively and communicate decisions in any way so as to be able to manage his financial resources and meet the essential requirements for his physical health and safety.

3. The trial court abused its discretion and committed an error of law in finding Richard Brezenski suffered from a mental illness or condition requiring the appointment of a guardian.

## Legal Analysis

Mr. Brezenski has raised three (3) issues on appeal, but the court finds that he is not entitled to relief on any of them.

All three issues raised by Mr. Brezenski allege that the court abused its discretion in reaching its findings of incapacity. "Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000). "In determining whether a court has abused its discretion, we do not usurp the trial court's duty as finder of fact. The trial court's findings, if supported by credible evidence, are binding upon a reviewing court and will be followed." *Perlberger v. Perlberger*, 626 A.2d 1186, 1196 (Pa. Super. 1993). An abuse of discretion must be established by clear and convincing evidence. *Id.* at 1197.

The first allegation raised by Mr. Brezenski is that the trial court abused its discretion in determining that he was incapacitated and that a guardian needed to be appointed on his behalf.

8

Before addressing the substance of this allegation, the court submits that this is an entirely bald allegation and too vague to meet the requirements of a concise statement. Mr. Brezenski has failed to allege how the court abused its discretion under the standard set forth above. Mr. Brezenski merely alleges that the trial court abused its discretion in reaching its decision, but there is no evidence or argument to support that allegation. In response, the court submits that it did not abuse its discretion and reached its decision based on the evidence presented which the court found credible. The Superior Court has established the following:

> Any person interested in the alleged incapacitated person's welfare may petition the court for a judicial determination that the person is indeed incapacitated and for the appointment of a guardian. However, a person is presumed to be mentally competent, and the burden is on the petitioner to prove incapacity by clear and convincing evidence. Our review of the trial court's determination in a competency case is based on an abuse of discretion standard, recognizing, of course, that the trial court had the opportunity to observe all of the witnesses, including, as here, the allegedly incapacitated person. A finding of mental incompetency is not to be sustained simply if there is any evidence of such incompetency but only where the evidence is preponderating and points unerringly to mental incompetency.

*In re Hyman*, 811 A.2d 605, 607-608 (Pa. Super. 2002)(citations omitted); *See also* 20 Pa. C.S.A. § 5511(a); 20 Pa. C.S.A. § 5518.

The trial court found that the evidence and testimony was clear and convincing that Mr. Brezenski was suffering from a decline in his mental health which rendered him incapacitated. Dr. Mamros offered significant testimony that Mr. Brezenski was suffering from Frontal Temporal Lobe Dementia and this is a progressive disease that will only get worse. Dr. Mamros had known Mr. Brezenski both professionally and personally for approximately thirty years prior to the filing of the petition. Dr. Mamros had acted as Mr. Brezenski's primary care physician for the majority of this time. His testimony that Mr. Brezenski's personality and behavior had

9

drastically changed was both credible and significant to the court. Dr. Mamros noted that, prior to the onset of his mental health issues, Mr. Brezenski had a career as a corrections officer and a constable. His recent behavior, extreme aggressiveness, hypersexual activity and violence resulting in criminal charges was uncharacteristic of Mr. Brezenski, which Dr. Mamros attributed to his Frontal Temporal Lobe Dementia.

Furthermore, Dr. Shchelchkov concurred with Dr. Mamros, and testified that Mr. Brezenski had a working diagnosis of early onset dementia with behavioral problems. Additionally, the testimony of the Petitioner and Ms. McCord demonstrated the extremely alarming behavior by Mr. Brezenski, including violent, criminal acts, which Dr. Mamros and Dr. Shchelchkov attributed to behavioral changes that occur with a diagnosis of Frontal Temporal Lobe Dementia. The Petitioner had been married to Mr. Brezenski for forty-seven years, and noted the uncharacteristic behavior and drastic personality changes in Mr. Brezenski. The court found Dr. Mamros, Dr. Shchelchkov, and the Petitioner to be credible witnesses, and found that their testimony supported the conclusion that Mr. Brezenski is incapacitated and needed a guardian.

Mr. Brezenski next alleges that the trial court abused its discretion by failing to consider the expert witness testimony and the testimony of Mr. Brezenski that he was able to handle his own affairs. In a guardianship hearing, the trial court is the finder of fact. As the ultimate arbiter of fact, the orphans' court is not required to adopt even an uncontradicted expert opinion where competent evidence of record supports the court's independent determination. *See Nomland v. Nomland*, 813 A.2d 850, 854 (Pa. Super. 2002) ("So long as the trial court's conclusions are founded in the record, the lower court was not obligated to accept the conclusions of the experts."); *Murphey v. Hatala*, 504 A.2d 917 (Pa. Super. 1986) ("[T]he trier

10

of fact is not bound by the testimony of any expert witness and is under no obligation to accept the conclusions of an expert witness.").

Mr. Brezenski's argument is misguided as the trial court did consider the testimony of all of the experts as well as Mr. Brezenski's own testimony. Following trial, the court took all of the testimony and evidence under advisement, reviewing all the transcripts of the proceedings.[34] Dr. Mamros and Dr. Shchelchkov provided significant testimony that Mr. Brezenski was suffering from frontal lobe dementia and early onset Alzheimer's and that he was incapacitated, necessitating the appointment of a guardian. Mr. Brezenski offered two counter-experts, Dr. Richard Ajayi, a licensed psychiatrist, who testified that between May 5, 2020 and July 7, 2020, he had seen Mr. Brezenski approximately four or five times.[35] Having observed Mr. Brezenski on July 7, 2020, Dr. Ajayi believed that Mr. Brezenski was not suffering from dementia. However, Dr. Ajayi's opinion was discredited when he admitted that Mr. Brezenski's paranoia regarding his family could be related to a disease process such as dementia.[36] Furthermore, Dr. Ajayi admitted that when he examined Mr. Brezenski on July 7, 2020, he was unaware that Mr. Brezenski had suicidal ideations previously, he was unaware of the instances of his homicidal ideations, he was unaware of his sexually inappropriate behavior, and he was unaware that Mr. Brezenski had been violent with his wife.[37] Moreover, Dr. Ajayi admitted that, as he was unaware of all of the aforementioned, he could not opine whether those behaviors were related to a psychological process such as dementia.[38]

Mr. Brezenski also called Dr. Eric Weisman, a board-certified neurologist, who testified

---

[34] Since the testimony was taken over the course of several months, the court felt it prudent to review all of the testimony, particularly that of the experts, prior to rendering a final decision on Mr. Brezenski's incapacity.
[35] Guardianship Hearing Transcript II, pgs. 19-20 (July 10, 2020).
[36] *Id.* at 29.
[37] *Id.* at 34-46
[38] *Id.* at 47.

that he only met Mr. Brezenski one time on June 18, 2020 for approximately an hour and fifteen minutes.[39] Based on his examination of Mr. Brezenski, Dr. Weisman concluded that he did not have dementia.[40] However, the opinion rendered by Dr. Weisman was discredited for multiple reasons. Dr. Weisman admitted that, despite the concerns over Mr. Brezenski's behavior at home, he did not inquire as to whether Mr. Brezenski's behavior had in fact changed.[41] Dr. Weisman admitted that he did not conduct a complete and accurate assessment because he was not asked to do so, he was asked only to determine the type of dementia present in Mr. Brezenski.[42] Dr. Weisman accepted as fact that Mr. Brezenski had only one lung because Mr. Brezenski informed him of such, when in fact Mr. Brezenski has both of his lungs.[43] Dr. Weisman admitted to not investigating the claims of Mr. Brezenski's displays of anger, hypersexuality, and confusion or his alarming personality changes because he was not asked to do so.[44] Despite meeting with Mr. Brezenski for over an hour and conducting a general examination, Dr. Weisman failed to notice that Mr. Brezenski was suffering from severe swelling in his right leg due to a cellulitis infection, which required his admission into Washington Hospital that same day.[45] Dr. Weisman further admitted that he disregarded information about the shift in Mr. Brezenski's personality and behavior because he could not confirm it.[46] Dr. Weisman also testified that it was irrelevant that Dr. Mamros had been treating Mr. Brezenski for approximately thirty years, and was dismissive of Dr. Mamros' observations

[39] *Id.* at 65.
[40] *Id.* at 78.
[41] Guardianship Hearing Transcript II at 77.
[42] *Id.* at 78.
[43] *Id.* at 80-81.
[44] *Id.* at 82.
[45] *Id.* at 85-86.
[46] *Id.* at 90.

12

regarding the changes in behavior.[47]

Dr. Weisman admitted that he was unaware that Mr. Brezenski had threatened Ms. McCord six days prior to the examination, but he also testified that it was not relevant to his conclusion.[48] Dr. Weisman further admitted that he was unaware of Mr. Brezenski's suicidal ideations.[49] Dr. Weisman ultimately opined that Mr. Brezenski's behaviors were not the result of dementia, but the result of him taking "speed," his characterization of Mr. Brezenski's prescription for Adderall.[50] Having reviewed Dr. Weisman's testimony, it was clear that he failed to review all information necessary to complete an accurate assessment, but rather made a perfunctory conclusion based on his one limited meeting with Mr. Brezenski. Furthermore, Dr. Weisman acted in an unprofessional manner during his telephone testimony, which the court found weighed against his credibility. Dr. Weisman interrupted cross-examination as he was clearly attempting to do other work while testifying.[51] Dr. Weisman was eating while testifying making it difficult to understand all of his testimony.[52] While on the record and knowing the court could hear him, Dr. Weisman stated to a staff member that he was still on the phone and "they're being jerks."[53] Ultimately, without court leave to do so, Dr. Weisman terminated the call during cross examination and rejected any attempts to be called back to complete his testimony.[54] Dr. Weisman's conduct was extremely unprofessional and inappropriate, factors the court was compelled to consider in weighing the credibility of his testimony.

---

[47] Guardianship Hearing Transcript II at 90-91.
[48] Id. at 97.
[49] Id. at 97.
[50] Id. at 93.
[51] Id. at 66-67.
[52] Id. at 75. Due to COVID protocols, Dr. Weisman was permitted to testify via teleconference for health and safety purposes, and also to accommodate his schedule.
[53] Guardianship Hearing Transcript II at 79.
[54] Id. at 98.

13

Dr. Mamros was called in rebuttal to refute the testimony of Dr. Ajayi and Dr. Weisman. Dr. Mamros testified that Dr. Ajayi's findings did not alter his opinion that Mr. Brezenski had Frontal Temporal Lobe Dementia. Dr. Mamros opined that Mr. Brezenski could have a good day where he would appear outwardly normal, and Dr. Ajayi's lack of familiarity with Mr. Brezenski could affect his findings. Mr. Brezenski's presentation as "normal" to Dr. Ajayi during one evaluation is consistent with a diagnosis of Frontal Temporal Lobe Dementia. To the contrary, Dr. Mamros had known Mr. Brezenski for approximately thirty years and had noticed the drastic change in his personality and behavior in the last three years.[55]

Dr. Mamros testified that, despite being Mr. Brezenski's primary care physician, he was never contacted by Dr. Weisman to discuss Mr. Brezenski's case.[56] Dr. Mamros indicated that he had reviewed Dr. Weisman's report, that it had not changed his diagnosis of dementia, and noted that Dr. Weisman's lack of familiarity and reliance on Mr. Brezenski for historical reporting did not lead to an accurate conclusion.[57] As testified, Mr. Brezenski failed to acknowledge any change or any issue, which is consistent with his diagnosis of dementia.[58] Dr. Mamros further rebutted Dr. Weisman's claim that Mr. Brezenski's Adderall prescription was the primary cause of his disturbing behavior. Mr. Brezenski had been prescribed Adderall since before Dr. Mamros began seeing him approximately thirty years ago. Dr. Mamros opined that Adderall was not the cause of Mr. Brezenski's behavioral changes as he had been taking it for a significant amount of time, and never exhibited these behaviors previously.[59] Dr. Mamros reiterated his opinion that Mr. Brezenski is suffering from Frontal Temporal Lobe Dementia.[60]

---

[55] Guardianship Hearing Transcript III pgs. 7-11.
[56] *Id.* at 11.
[57] *Id.* at 12.
[58] *Id.* at 13-15
[59] *Id.* at 15-17.
[60] *Id.* at 17.

The trial court did a thorough review of all the testimony proffered by the expert witnesses in this case and it is within the court's discretion to determine the credibility of the testimony. Having considered all the testimony, it was clear that Dr. Mamros was the most familiar with Mr. Brezenski and Dr. Mamros was unequivocal in his opinion that Mr. Brezenski is suffering from Frontal Temporal Lobe Dementia. In regard to Dr. Ajayi and Dr. Weisman, there is no question that they are unfamiliar with Mr. Brezenski and were only able to observe him for an extremely limited amount of time. Furthermore, in its assessment of credibility, the court did not find the testimony of Dr. Ajayi or Dr. Weisman persuasive or sufficient to overcome the expert findings of Dr. Mamros and Dr. Shchelchkov. Moreover, the review of Mr. Brezenski's testimony did nothing to alleviate the concerns regarding his condition and mental capacity. Thus, the court submits there was no abuse of discretion as the testimony of Dr. Mamros, as well as Dr. Shchelchkov and the Petitioner, provided sufficient evidence to find that Mr. Brezenski is incapacitated and requires a guardian.

The final allegation raised by Mr. Brezenski is that the trial court abused its discretion by finding that he suffers from a mental illness that requires the appointment of a guardian. This allegation is almost identical to the first allegation wherein Mr. Brezenski claimed the trial court abused its discretion by finding him to be incapacitated and needing a guardian. As discussed at length above, Dr. Mamros provided sufficient medical testimony that Mr. Brezenski is currently suffering from Frontal Temporal Lobe Dementia. This is a progressive, degenerative mental disease with little hope of recovery. Mr. Brezenski is clearly suffering from extreme behavioral and personality changes that have caused him to become aggressive, violent, and hypersexual, and be subject to criminal charges. Dr. Shchelchkov opined that he has a working diagnosis of dementia with behavioral changes that concurred with the diagnosis of Dr. Mamros. Mr.

15

Brezenski provided no argument or evidence to demonstrate that the court reached an unreasonable conclusion, not supported by the evidenced.

Wherefore, for the reasons set forth herein, the orphans' court respectfully submits that the Superior Court affirm the judgment finding that Mr. Brezenski suffers from a degenerative neurological disease which rendered him incapacitated and necessitated the appointment of a guardian of his person and estate.

By the Court,

Date: 5/14/2024

_____, P.J.

John F. DiSalle

16

## CERTIFICATE OF SERVICE

I, the undersigned do hereby certify that I caused a copy of the foregoing Brief of Appellant upon counsel for Appellee, Corey S. Young, Esquire, by email and US Regular Mail, postage prepaid on the 1st day of September 2021:

Corey Young, Esquire
BASSI, VREELAND & ASSOCIATES
111 Fallowfield Avenue
P.O. Box 144
Charleroi, PA 15022

**BLACKWELL & ASSOCIATES**

Date: 9/1/2021          By: _____
                             Christopher L. Blackwell, Esquire
                             deRicci T. Getty, Esquire
                             6 South Main Street, Ste. 321
                             Washington, PA 15301
                             Counsel for Appellant, Richard Brezenski